GEORGIA DARVIRIS & another[1] *vs.* JAMES G. PETROS.

Middlesex. April 8, 2004. - August 9, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Civil,* Summary judgment, Statute of limitations. *Limitations, Statute of. Medical Malpractice,* Consent to medical treatment. *Negligence,* Medical malpractice. *Consumer Protection Act,* Unfair or deceptive act, Trade or commerce.

This court concluded that a patient claiming to be a victim of an unauthorized medical procedure could not maintain an action against her physician for unfair or deceptive practices in violation of G. L. c. 93A, where the facts established by the patient, viewed in the light most favorable to her, indicated no more than allegations regarding the possible negligent delivery of medical care (a claim to which G. L. c. 93A did not apply), rather than allegations regarding any entrepreneurial or business aspect of the physician's practice (a claim to which G. L. c. 93A could apply). [277-281]
This court concluded that a patient claiming to be a victim of an unauthorized medical procedure (a claim sounding in negligence) could not maintain an action against her physician for unfair or deceptive practices in violation of G. L. c. 93A under the theory that the physician's actions constituted a violation of G. L. c. 111, § 70E, the so-called "patients' bill of rights," and therefore a per se violation of G. L. c. 93A, where allowing the patient to restate a claim otherwise subject to the medical malpractice act, St. 1986, c. 351, as a violation of G. L. c. 93A would undermine the careful policy choices articulated by the Legislature, which had comprehensively covered the medical malpractice litigation field in a way that precluded further remediation under G. L. c. 93A. [281-284]

CIVIL ACTION commenced in the Superior Court Department on March 8, 1999.

The case was heard by *Leila R. Kern,* J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Herbert D. Friedman (Herbert Abrams* with him) for the plaintiffs.

---

[1] Nicholas P. Darviris, the husband of Georgia Darviris. As our discussion primarily concerns Georgia Darviris, we shall refer to her as Darviris or the plaintiff.

*John J. Barter* (*Claudia A. Hunter* with him) for the defendant.

The following submitted briefs for amici curiae:

*Thomas F. Reilly*, Attorney General, *Pamela Kogut & Sara Hinchey*, Assistant Attorneys General, for the Commonwealth.

*Carl Valvo* for Professional Liability Foundation, Ltd., & another.

MARSHALL, C.J. May a patient who claims to be the victim of an unauthorized medical procedure bring an action against her physician for unfair or deceptive practices in violation of G. L. c. 93A? That is the central issue in this case commenced by Georgia Darviris and her husband against James G. Petros, a surgeon, who performed an excisional hemorrhoidectomy on Darviris without her consent, she alleges, and in violation of what has been termed the "patients' bill of rights," G. L. c. 111, § 70E. Resolution of the question determines the outcome of the case because, as we shall explain, the remaining claims are barred by the applicable statute of limitations.[2]

Petros moved for summary judgment, arguing that the G. L. c. 93A claim failed to state a cause of action, and the remaining claims were barred by the statute of limitations. A judge in the Superior Court agreed, and allowed his motion. The Appeals Court affirmed. *Darviris* v. *Petros*, 59 Mass. App. Ct. 323 (2003). We granted the plaintiff's application for further appellate review, and now affirm the judgment of the Superior Court judge.

1. *Background.* We relate the record facts in their light most favorable to the plaintiffs, the nonmoving parties on the motion for summary judgment. See *Remy* v. *MacDonald*, 440 Mass. 675, 676 (2004). On December 14, 1995, Darviris sought treatment from James Petros for rectal bleeding and pain. According to Darviris, Petros recommended a simple surgical procedure, a fissurectomy, which involves cauterizing the anal fissures. Petros informed Darviris of possible side effects of that procedure, but

---

[2]In addition to the G. L. c. 93A claim, the plaintiffs brought common-law and statutory claims for failure to obtain informed consent, negligent infliction of emotional distress, and loss of consortium.

said such effects were unlikely and could, in any event, be corrected by a procedure that could be performed in his office.[3]

Before her surgery, scheduled for January 10, 1996, the plaintiff's symptoms abated, and she inquired of Petros whether she should cancel the surgery. He assured her that the surgery was necessary because her symptoms were "chronic," and she agreed to proceed.

A few days before the surgery, the plaintiff went for a preoperative evaluation to the hospital where Petros was to perform the surgery. There she signed, but did not read, a consent form; the form authorized Petros to perform a fissurectomy. Darviris also consented "to the performance of operations, procedures, and treatment in addition to or different from those now contemplated," which Petros in his judgment may "consider necessary or advisable in my present illness." Although the consent form stated to the contrary,[4] Darviris also testified at her deposition that no one discussed a fissurectomy, a hemorrhoidectomy, or any other procedure with her at that time.

On January 10, 1996, the plaintiff underwent surgery, as scheduled. At her request, and after discussion with an anesthesiologist, she received a spinal anesthesia, and remained awake throughout the procedure. She testified that, during the surgery, neither Petros nor any assistant discussed the procedure being performed on her. It was only after surgery that Petros told Darviris in the recovery room that he had performed a hemorrhoidectomy, and not a fissurectomy. Darviris became very upset, and informed Petros that she had not consented to a hemorrhoidectomy and would not have given any such consent because her godfather had suffered greatly as a consequence of undergoing the same procedure.

---

[3]Petros's notes from his consultation with Darviris on December 14, 1995, indicate that he also discussed with her the removal of a hemorrhoid if surgery revealed that a hemorrhoid was the cause of her rectal bleeding, and that she understood the possible complications associated with that procedure. Darviris has denied that any such discussion occurred.

[4]The consent form stated: "The nature and purpose of the operation . . . and the possible alternative methods of treatment have been explained to me by Dr. Helo and to my complete satisfaction." At the bottom of the form, on a line marked "signature of witness" is written "GHelo." The plaintiff testified that she did not meet Dr. Helo until after her surgery.

Beginning the following day, and for the following two months, Darviris experienced terrible pain, which she attributed to the hemorrhoidectomy. Petros saw her weekly for follow-up visits, repeatedly assuring her that she was improving. Because Darviris continued to experience extreme pain, on Petros's advice, she underwent a second surgery conducted by Petros on March 10, 1996, during which Petros noted that one of the hemorrhoidectomy wounds had not healed. Sometime thereafter Darviris sought treatment from a different physician.

The plaintiffs filed their complaint on March 8, 1999, more than three years after the first surgery, but less than three years after the second surgery. An amended six-count complaint, filed on June 7, 1999, alleged three different theories for the defendant's failure to obtain his patient's consent for a hemorrhoidectomy — simple battery, failure of informed consent, and violation of G. L. c. 111, § 70E[5] — and claims for negligent infliction of emotional distress, violation of G. L. c. 93A, and loss of consortium, the husband's only claim.

2. *Chapter 93A claim.* In ruling against the claim that Petros's alleged unauthorized surgery constituted an unfair or deceptive act in violation of G. L. c. 93A, the judge in the Superior Court concluded that "an unfair or deceptive act requires more than a finding of negligence." Because she found no such showing, the judge granted summary judgment on the G. L. c. 93A claim. Relying primarily on *Riley* v. *Presnell*, 409 Mass. 239, 243 (1991), and *Little* v. *Rosenthal*, 376 Mass. 573, 577 (1978), Darviris argues that G. L. c. 93A applies to all unfair or deceptive practices, including those that arise "in the context of a patient-physician relationship." The defendant's failure to obtain her informed consent to perform a hemorrhoidectomy, she says, constituted either a negligent omission of fact or a misrepresentation of fact, claims that are encompassed, she asserts, by G. L. c. 93A. In addition, she argues that the claimed violation of G. L. c. 111, § 70E, constitutes a per se violation of G. L. c. 93A, because the "patients' bill of rights" statute was promulgated "for the protection of the public's health, safety

---

[5]General Laws c. 111, § 70E, states in relevant part: "Every patient or resident of a facility shall be provided by the physician in the facility the right . . . to informed consent to the extent provided by law . . . ."

and welfare." See 940 Code Mass. Regs. § 3.16(3) (1993).[6] We reject each argument.

"The purpose of G. L. c. 93A is to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace." *Poznik* v. *Massachusetts Med. Professional Ins. Ass'n,* 417 Mass. 48, 53 (1994). While G. L. c. 93A is a statute of "broad impact," *Greenfield Country Estates Tenants Ass'n* v. *Deep,* 423 Mass. 81, 88 (1996), and cases cited, the limits of which are not precisely defined, *Mechanics Nat'l Bank* v. *Killeen,* 377 Mass. 100, 109 (1979), a violation of G. L. c. 93A requires, at the very least, more than a finding of mere negligence, as the Superior Court judge correctly noted. See *Meyer* v. *Wagner,* 429 Mass. 410, 424 (1999) (concluding that a client's G. L. c. 93A, claims against her attorney did not suggest any unfair or deceptive acts, "but instead sound[ed] in negligence"); *Poly* v. *Moylan,* 423 Mass. 141, 151 (1996), cert. denied, 519 U.S. 1114 (1997) (negligent representation by attorney did not violate G. L. c. 93A, where attorney "did not engage in conduct involving dishonesty, fraud, deceit or misrepresentation"); *Squeri* v. *Mc-Carrick,* 32 Mass. App. Ct. 203, 207 (1992) ("A negligent act standing by itself does not give rise to a claim under [G. L.] c. 93A. There must in addition be evidence that the negligence was or resulted in an unfair or deceptive act or practice").

No less than a claim of legal malpractice, a claim for the negligent delivery of medical care, without more, does not qualify for redress under our consumer protection statute, G. L. c. 93A. As the Appeals Court noted, Petros may have been negligent "in attending to his patient's preferences," but the record does not evidence that his conduct was unfair or deceptive, "particularly where the plaintiff admits she signed a consent form, without reading it, six days before the surgery."

---

[6]Title 940 Code Mass. Regs. § 3.16(3) (1993) states in relevant part: "an act or practice is a violation of [G. L. c. 93A] if . . . [i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection . . . ."

*Darviris* v. *Petros*, 59 Mass. App. Ct. 323, 329 (2003), citing *O'Leary* v. *Nepomuceno*, 44 Mass. App. Ct. 683, 685 (1998).[7]

While we have no hesitancy in concluding that the negligent provision of medical care, without more, does not give rise to a claim under G. L. c. 93A, this does not mean that all conduct of medical care providers is beyond the reach of that statute. As appellate courts in other jurisdictions have concluded, consumer protection statutes may be applied to the entrepreneurial and business aspects of providing medical services, for example, advertising and billing, even though those statutes do not reach medical malpractice claims. See, e.g., *Haynes* v. *Yale-New Haven Hosp.*, 243 Conn. 17, 37-38 (1997) (claim under consumer protection statute against health care provider must concern entrepreneurial or business aspect of provision of medical services); *Simmons* v. *Stephenson*, 84 S.W.3d 926, 928 (Ky. Ct. App. 2002) (consumer protection statute applies only to entrepreneurial, commercial, or business aspect of the practice of medicine); *Nelson* v. *Ho*, 222 Mich. App. 74, 82-84 (1997) (only allegations that concern entrepreneurial, commercial, or business aspect of physician's practice may be brought under consumer protection statute); *Karlin* v. *IVF Am., Inc.*, 93 N.Y.2d 282, 293-294 (1999) (dissemination of deceptive and misleading advertisements and promotional materials is consumer-oriented conduct that is targeted by consumer protection statute); *Quimby* v. *Fine*, 45 Wash. App. 175, 179-180 (1986) (lack of informed consent claim against healthcare provider may fall within scope of consumer protection statute if it concerns entrepreneurial aspect of medical practice). See also *Dorn* v. *McTigue*, 121 F. Supp. 2d 17, 19-20 (D.D.C. 2000) (interpreting District of Columbia consumer protection statute); *Gadson* v. *Newman*, 807 F. Supp. 1412, 1422 (C.D. Ill. 1992) (interpreting Illinois consumer protection statute); *Keyser* v. *St. Mary's Hosp., Inc.*, 662 F. Supp. 191, 194 (D. Idaho 1987) (interpreting Idaho consumer protection statute). As the Supreme Court of Connecticut aptly noted, "[t]o hold otherwise would transform

---

[7]We agree with the Appeals Court that the plaintiff's reliance on *Riley* v. *Presnell*, 409 Mass. 239, 243 (1991), and *Little* v. *Rosenthal*, 376 Mass. 573, 577 (1978), is misplaced. Those cases do not stand for the proposition that medical malpractice actions may be brought under G. L. c. 93A. See *Darviris* v. *Petros*, 59 Mass. App. Ct. 323, 329 (2003).

every claim for medical malpractice into a [consumer protection act] claim." *Haynes* v. *Yale-New Haven Hosp.*, *supra* at 38. Cf. *Little* v. *Rosenthal, supra* at 577 ("[W]e distinguish those c. 93A actions which allege unfair trade practices in medical treatment from those which merely raise such questions as fraudulent or deceptive billing practices by a health care provider . . . In the latter case . . . there would be no issue of medical 'malpractice, error or mistake' ").

We therefore consider whether Darviris's allegations against Petros concern any entrepreneurial or business aspect of his medical practice, to which G. L. c. 93A could apply, or whether they state merely a claim for the negligent delivery of medical care. To do so we consider the underlying nature of the claim. See *Meyer* v. *Wagner, supra* at 424. Darviris alleges that she consented to a fissurectomy but not a hemorrhoidectomy, from which she suffered painful and unanticipated side effects. If Petros intended to perform a hemorrhoidectomy and did not advise Darviris of that possible treatment nor inform her of the risks attendant to that surgery, he may indeed be faulted for negligent failure to obtain informed consent. See, e.g., *Harnish* v. *Children's Hosp. Med. Ctr.*, 387 Mass. 152, 155 (1982) ("a physician owes to his patient the duty to disclose in a reasonable manner all significant medical information that the physician possesses or reasonably should possess that is material to an intelligent decision by the patient whether to undergo a proposed procedure"). But there is nothing in the record to suggest that any negligence by Petros, even if proved, concerns any entrepreneurial or business aspect of his medical practice.

Darviris argues, for the first time here, that Petros's failure to obtain her informed consent to perform a hemorrhoidectomy constitutes a violation of G. L. c. 93A, because the surgery may have resulted in his financial gain, and therefore "relates" to the entrepreneurial aspect of his medical practice. Assuming the argument is not waived, there is nothing to suggest that Petros performed a hemorrhoidectomy as opposed to a fissurectomy for his own financial gain. There are doubtless numerous circumstances in which a physician selects to perform one, rather than a different and less expensive, procedure — or no treatment at all. The selection may constitute medical

malpractice. But unless a patient can demonstrate that the physician selected the treatment solely for his or her financial benefit — and there is nothing to suggest any such motivation on the part of Petros — evidence that the treatment was more costly than another or no treatment at all is insufficient to establish an unfair or deceptive practice claim. Cf. *Karlin* v. *IVF Am., Inc., supra* at 293-294 (consumer protection claims viable where health care provider undertook misleading advertising campaign to promote medical procedure to prospective patients). The facts established by Darviris, viewed in their light most favorable to her, indicate no more than the possible negligent delivery of medical care to a particular patient.

The plaintiff points to 940 Code Mass. Regs. § 3.16(3) to argue that even if her surgeon were merely negligent in failing to obtain her consent to perform a hemorrhoidectomy, a G. L. c. 93A claim is still viable. That regulation, promulgated by the Attorney General pursuant to G. L. c. 93A, § 2 (*c*), states, in relevant part, that "an act or practice *is* a violation of [G. L. c. 93A] if . . . [i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare . . ." (emphasis added). General Laws c. 111, § 70E, which requires physicians to provide their patients with the right "to informed consent to the extent provided by law," is such a statute, Darviris argues, and every violation of that statute constitutes a violation of G. L. c. 93A. See 940 Code Mass. Regs. § 3.16(3). This argument is also unavailing.

As we noted in *American Shooting Sports Council, Inc.* v. *Attorney Gen.,* 429 Mass. 871, 875 (1999), G. L. c. 93A, § 2 (*c*), "limits the Attorney General's rule-making power to be within the concepts of deception or unfairness, as guided by administrative and judicial interpretation of the [Federal Trade Commission] Act." While medical professionals are not exempt from all regulation under the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) (2000), see *Gadson* v. *Newman, supra* at 1418, that act has been applied only to commercial aspect of medical practice. See *Federal Trade Comm'n* v. *Indiana Fed'n of Dentists,* 476 U.S. 447 (1986) (action against dental association for forbidding its members to submit dental X-rays to dental insur-

ers); *American Med. Ass'n* v. *Federal Trade Comm'n*, 638 F.2d
443 (1980), aff'd, 455 U.S. 676 (1982) (action against American
Medical Association for enforcing restraints on advertising,
solicitation, and contract practices by physicians). Further, "the
Attorney General's power continues to exist unless the
promulgated regulations conflict with the legislative scheme, or
the area is one as to which the Legislature has expressly or
implicitly covered the field in a way which precludes further re-
mediation by regulation under G. L. c. 93A" (citations omitted).
*American Shooting Sports Council, Inc.* v. *Attorney Gen., supra*
at 881. See *Cabot Corp.* v. *Baddour*, 394 Mass. 720, 725-726
(1985) (no G. L. c. 93A claims by defrauded purchaser of securi-
ties because Uniform Securities Act was intended to provide
comprehensive regulation of securities field).[8] We believe that
application of 940 Code Mass. Regs. § 3.16(3) to the type of
negligence based claims made in this case is one such
circumstance, as we now explain.[9]

General Laws c. 111, § 70E, guarantees to patients the right
to informed consent "to the extent provided by law." That
statute provides that any patient whose statutory right is violated
"may bring, in addition to any other action allowed by law or
regulation, a civil action under [G. L. c. 231, §§ 60B-60E]."
The latter enumerated sections of G. L. c. 231 comprise aspects
of the medical malpractice act, St. 1986, c. 351 (act), a
comprehensive statute enacted by the Legislature in 1986, to
avert a growing crisis in the medical profession occasioned by
the "burgeoning cost of malpractice insurance." *McGuiggan* v.

---

[8]After our decision in *Cabot Corp.* v. *Baddour*, 394 Mass. 720 (1985), the
Legislature amended G. L. c. 93A to make it expressly applicable to certain
securities transactions. St. 1987, c. 664.

[9]In light of our decision that 940 Code Mass. Regs. § 3.16(3) is invalid as
applied to the defendant's alleged violation of G. L. c. 111, § 70E, we need
not decide whether the regulation is facially valid. We note, however, that the
regulation, which states that violations of G. L. c. 93A include any failure to
"comply with existing statutes, rules, regulations or laws, meant for the
protection of the public's health, safety, or welfare," could be interpreted to
include a violation of any statute in the Commonwealth. See *Goodridge* v.
*Department of Pub. Health*, 440 Mass. 309, 322 (2003), quoting *Opinion of
the Justices*, 341 Mass. 760, 785 (1960) (explaining that the Legislature has
the "power to enact rules to regulate conduct, to the extent that such laws are
'necessary to secure the health, safety, good order, comfort or general welfare
of the community' ").

*New England Tel. & Tel. Co.*, 398 Mass. 152, 163 (1986) (Lynch, J., concurring). The act is an exhaustive statutory scheme governing medical malpractice claims, and requires (among other things) that actions be heard first by a tribunal, G. L. c. 231, § 60B; prohibits plaintiffs from including claims for specific monetary amounts in their complaints, G. L. c. 231, § 60C; shortens the statute of limitations period for minors, G. L. c. 231, § 60D; requires specification and itemization in damages awards, G. L. c. 231, § 60F; establishes a collateral benefits rule, G. L. c. 231, § 60G; and limits recovery for pain and suffering, G. L. c. 231, § 60H. The act also provides that "[a]ctions of contract or tort for malpractice, error or mistake against physicians . . . shall be commenced only within three years after the cause of action accrues." St. 1986, c. 351, § 30. The comprehensiveness of the statute convinces us that the Legislature "covered the field" of medical malpractice litigation when it enacted St. 1986, c. 351. See *American Shooting Sports Council, Inc.* v. *Attorney Gen.*, supra at 881; *Cabot Corp.* v. *Baddour*, supra at 725-726.[10]

"The performance of a surgical procedure by a physician without the patient's consent constitutes professional misconduct, is malpractice within G. L. c. 231, § 60B, and is subject to the procedures established by this statute." *Harnish* v. *Children's Hosp. Med. Ctr.*, supra at 154. Allowing a plaintiff to restate a claim, otherwise subject to the medical malpractice act, as a violation of G. L. c. 93A, would undermine the careful policy choices articulated by the Legislature. As expressly relevant to this case, the act has a three-year statute of limitations, St. 1986, c. 351, § 30, while actions under G. L. c. 93A, § 9, are subject to a four-year statute of limitations. G. L. c. 260, § 5A. And while the act permits compensatory damages and does not authorize punitive damages, see *Goodrow* v. *Lane Bryant, Inc.*, 432 Mass. 165, 178 (2000), G. L. c. 93A encourages multiple damages which "are essentially punitive in nature." *McEvoy Travel Bur., Inc.* v. *Norton Co.*, 408 Mass. 704, 717

---

[10]Because we conclude that the allegations of Darviris and her husband against Petros do not concern any entrepreneurial or business aspect of his medical practice, we express no view as to the applicability of 940 Code Mass. Regs. § 3.16(3) to such claims.

(1990). Expanding the scope of damages available to plaintiffs who are the victims of medical malpractice, and the period within which to make such claims, is contrary to the express intent of the Legislature in enacting St. 1986, c. 351. See *McGuiggan* v. *New England Tel. & Tel. Co.*, *supra* at 163 (Lynch, J., concurring).

While this is sufficient to resolve the plaintiff's claim with respect to the applicability of 940 Code Mass. Regs. § 3.16(3), to her case, we also agree with the Appeals Court that the Legislature's specificity in drafting G. L. c. 111, § 70F (which requires informed consent for HTLV-III testing and expressly allows a cause of action under G. L. c. 93A), further supports our conclusion that a violation of G. L. c. 111, § 70E, may in some cases constitute a violation of G. L. c. 93A, but is not a violation of G. L. c. 93A where the claim is one of negligent medical malpractice. Just as a claim for the negligent delivery of medical care cannot independently state a cause of action as an unfair or deceptive act under G. L. c. 93A, neither can such a claim state a cause of action under G. L. c. 93A by operation of 940 Code Mass. Regs. § 3.16(3).

3. *Remaining claims.* The Superior Court judge determined that the plaintiff's remaining claims, and her husband's claim for loss of consortium, were barred by the statute of limitations. The Appeals Court affirmed those rulings. *Darviris* v. *Petros*, *supra* at 326-327, 331. We affirm those aspects of the decision of the Superior Court judge for the reasons stated by the Appeals Court. See *id.*

4. *Conclusion.* The judgment of the Superior Court granting summary judgment for the defendant is affirmed.

*So ordered.*