NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-319

LISA ANTONELLI JONES

vs.

RYNE STEVEN JOHNSON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a Superior Court jury trial, the plaintiff, Lisa A. Jones, appeals from judgments that, collectively considered, dismissed her claims against the defendant dentist, Ryne S. Johnson, arising out of incidents of alleged sexual harassment that occurred while she was his patient in 2014.[1]  We conclude that a judge (first motion judge) erred in dismissing Jones's claims under G. L. c. 93A and for intentional infliction of emotional distress (IIED).  We further conclude that a second

---

[1] Three different partial judgments entered, on the same date, based on the partial allowance of Johnson's motion to dismiss, the partial allowance of his motion for summary judgment, and a jury verdict that resolved the last remaining claim.  In the absence of a certification under Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), "the better practice is to defer the entry of anything designated a 'judgment' until all claims are determined as to all parties and then to have a single final judgment enter as to all claims and parties."  Jones v. Boykan, 74 Mass. App. Ct. 213, 218 n.9 (2009).

motion judge erred in ordering summary judgment for Johnson on Jones's claim of assault and battery, although that judge was correct in ruling that most of Jones's public accommodation claim was time-barred and not saved by the continuing violation doctrine. We therefore vacate portions of the judgments and remand for further proceedings.

Background. We discuss the key allegations of the first amended complaint (complaint), reserving certain details for later discussion. When Jones sought treatment in February 2014 for a front tooth that needed a crown, Johnson made inappropriate sexually oriented comments to her, both in his office and in a telephone call to her afterward. These included responding to her question about her options (by which she meant treatment options) by suggesting that she "always ha[d] Weld Square," referring to an area noted for sex workers in New Bedford, a city near which she lived.

When Jones returned to Johnson's office in April 2014 because a temporary crown had come loose, he told her there was no charge for the visit but that she could buy him a drink when he came to New Bedford a few weeks later. Later in April, he sent her a text message asking to meet; she "felt trapped and pressured by this behavior as she was part-way through the dental treatment and had paid [Johnson's] practice a substantial amount of money." After several text exchanges, she told him

that she did not feel comfortable meeting him socially, to which he replied, "Okay, we can keep this strictly professional." Jones suffered stress, hair loss, anxiety, and fear about returning for treatment.

When Jones returned for an appointment in June 2014, Johnson seemed angry (as Jones had feared) and did not speak to her.  To her surprise in light of what Johnson's office had told her about the purpose of the visit, he began drilling into and pushing on the tooth, causing her substantial pain.  He then pulled on the tooth using pliers and a wire and exclaimed, "Oh, no!"  She asked what was wrong and Johnson eventually replied, "Your tooth broke to the gum line and I can't do the crown now." She asked him if she had options, to which he replied that she could work the streets in New Bedford.  He also said that she had two choices:  "a post and crown which might not last or an implant for $8,500."  Jones stopped treatment with Johnson.

Jones later commenced this action.  The complaint alleged, among other things, claims for violation of c. 93A, IIED, assault and battery, and sex discrimination in a place of public accommodation, see G. L. c. 272, § 98.[2]  The c. 93A and IIED

_____

[2] As discussed infra, the public accommodation claim was initially filed with the Massachusetts Commission Against Discrimination under G. L. c. 151B, § 5, and then dismissed and refiled in Superior Court.  The complaint asserted other claims, including against Johnson's dental practice, that were later dismissed and are not at issue on appeal.

3

claims were dismissed in 2017 for failure to state a claim. Later, on Johnson's 2018 summary judgment motion, the assault and battery claim was dismissed, and the public accommodation claim was narrowed on timeliness grounds. What remained of that claim was tried in 2021 to a defense verdict. Judgment entered, and this appeal followed.

Discussion. We review the sufficiency of the complaint de novo, taking as true its factual allegations and drawing all reasonable inferences in Jones's favor. See Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011). "[W]e look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief." Id., citing Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-636 (2008). In doing so, we consider, among other things, exhibits attached to the complaint. See Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000).

1. Chapter 93A claim. In the context of medical (or in this case dental) treatment, alleged negligence alone does not state a c. 93A claim. See Darviris v. Petros, 442 Mass. 274, 278-280 (2004). Rather, a plaintiff must allege some unfairness or deception in an "entrepreneurial or business aspect of [the defendant's dental] practice." Id. at 280. Here, the first motion judge dismissed Jones's c. 93A claim on the ground that

4

her complaint failed to allege that any of Johnson's conduct was economically motivated.

Jones's complaint, however, attached and incorporated her c. 93A demand letter, in which she alleged that Johnson's conduct had an economic dimension.  Specifically, she alleged that after Johnson broke her tooth, he told her that a crown probably would not last and suggested that she proceed with an implant costing $8,500.  His office retained the money she had already paid for the crown.  After her final visit, his office pressured her to return, including by "falsely stating that she would lose all of her money and that [the] office had additionally obtained her insurance coverage/payments . . . to force her to continue treatment (and remain under the financial leverage of Dr. Johnson . . . ) when it was clear that she was seeking an alternate provider."

Jones cited these allegations in her opposition to Johnson's motion to dismiss.  We view the allegations in the light most favorable to Jones and draw all reasonable inferences from them in her favor.  See Curtis, 458 Mass. at 676.  In that light, the allegations were sufficient to state a claim under c. 93A as interpreted in Darviris, 442 Mass. at 278-281.  Dismissal of that claim was therefore error.

2. IIED claim. To state a claim for IIED, a plaintiff must allege four elements. See Agis v. Howard Johnson Co., 371 Mass. 140, 144 (1976).

> "It must be shown (1) that the actor intended to inflict emotional distress or that [they] knew or should have known that emotional distress was the likely result of [their] conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable [person] could be expected to endure it" (citations and quotations omitted).

Id. at 144-145. Here, the first motion judge dismissed Jones's IIED claim on the grounds that she failed to allege either that Johnson's conduct was sufficiently extreme and outrageous or that Johnson intended to inflict such distress on Johnson.

"The standard for making a claim of intentional infliction of emotional distress is very high," and there is no doubt that a "judge may grant a motion to dismiss where the conduct alleged in the complaint does not rise to [the] level" required by Agis (quotation omitted). Polay v. McMahon, 468 Mass. 379, 385-386 (2014). Here, however, Jones alleged that Johnson made numerous inappropriate sexual comments and advances to her when she was a patient under his care, intentionally broke her tooth as retaliation for rebuffing his advances, and finally suggested that, inferentially in spite of, or because of, her damaged front tooth, she could still become a sex worker on the street

6

unless she paid $8,500 for an implant. Viewing these allegations and the reasonable inferences therefrom in the light most favorable to Jones, we cannot reasonably say, as a matter of law, that the conduct was not extreme and outrageous within the meaning of Agis, 371 Mass. at 145.

The first motion judge also ruled that the complaint failed to allege, except in impermissible conclusory fashion, see Iannacchino, 451 Mass. at 635-636, that Johnson intended to inflict emotional distress. The judge read the complaint as alleging only that emotional distress was "the predictable result of actions (sexually harassing her and intentionally breaking her tooth) that [Johnson] took because he was trying to produce different results altogether (persuading [Jones] to take part in the romantic/sexual relationship and retaliating against her for not doing so)." What this overlooks is that under Agis it also suffices that the defendant "knew or should have known that emotional distress was the likely result of his conduct." Agis, 371 Mass. at 144-145. The complaint sufficiently alleged this element. Dismissal of the IIED claim was therefore error.

3. Assault and battery claim. In reviewing whether summary judgment was proper on the assault and battery claim, we ask whether, viewing the evidence in the light most favorable to Jones as the nonmoving party, all material facts were established and Johnson was entitled to judgment as a matter of

7

law.  See Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).  Johnson could also obtain summary judgment by showing that Jones, who would bear the burden of proof at trial, had no reasonable expectation of proving an essential element of her case.  See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

Jones claimed that Johnson committed an assault and battery "by his malicious, intentional and permanently damaging treatment of [Jones] resulting in breaking off of her tooth." The second motion judge correctly characterized this claim as one for battery (rather than assault and battery).  See Conley v. Romeri, 60 Mass. App. Ct. 799, 805 n.6 (2004).  The judge recognized that the tort of battery required, among other things, that the defendant have caused a harmful or offensive contact with the person of another.  See Waters v. Blackshear, 412 Mass. 589, 590 (1992).

The judge ruled that here, the summary judgment record contained insufficient evidence that Johnson caused any "harmful" contact with Jones.  In the judge's view, the only evidence of the contact being harmful was Jones's own deposition testimony that Johnson had wrapped a wire around her tooth, "snapped it down until [her] tooth broke," and then, when Jones asked him what had happened, replied, "your tooth snapped off to the gumline."  Johnson, however, offered an affidavit from an

8

expert periodontist opining -- based among other things on radiographs (X-rays) taken before and after the event and on a conversation with Johnson -- that Jones's tooth had not fractured at all.  Rather, the expert opined that composite resin material, left over from a 2006 root canal procedure, had become loose and separated from Jones's tooth.  In light of this expert evidence, and without any contrary expert evidence offered by Jones, the judge ruled that "no finder of fact reasonably could conclude that Johnson in fact had broken her tooth."

This ruling was in error.  The expert's opinion was based in part on the explanation Johnson gave him of what happened.  Not only did Johnson never tell Jones this version, but he made a contemporaneous comment to her that undercuts it.  A finder of fact could credit Jones's deposition testimony that (1) Johnson told her that her tooth had snapped off, and (2) Johnson never informed her that "it was the resin plug that actually loosened and gave way and not the tooth itself."[3]  Johnson, as a dentist

_____

[3] A finder of fact could also credit Jones' deposition testimony that, at an earlier appointment with Johnson, when her old crown was removed, she could still see a small tooth "like a rabbit tooth" remaining, but that after the "snapping" incident, Johnson gave her a mirror and she looked and saw that she had "no tooth in [her] head."  Jones's account of a dental hygienist's surprised reaction to the "snapping" also supports Jones's claim.

9

with twenty-seven years of experience as of the time he treated Jones, was not lacking in expertise of his own.  What he told Jones (according to her) was in the nature of an excited utterance, arguably against his own interest, and thus less likely to be fabricated.  The finder of fact would not be required to believe either (1) what Johnson might have said later to the expert periodontist that informed the expert's opinion, or (2) Johnson's deposition testimony that he noticed and told Jones that the plastic filling (or "core") of her tooth was "wiggling" and "had a little wobble to it."[4]  Not every question regarding an alleged injury in a medical setting requires expert testimony.

In short, there remained a genuine issue of fact as to whether Johnson broke Jones's tooth.  Summary judgment for Johnson on the battery claim was therefore error.

4.  <u>Public accommodation claim; timeliness</u>.  The second motion judge ordered summary judgment for Johnson on most of Jones's public accommodation claim, on the ground that most of Johnson's alleged acts of harassment occurred, and Jones knew the situation was unlikely to improve, more than 300 days before

---

[4] The apparently contemporaneous written record of Jones's visit stated that "the core broke off the tooth which left a stump."  Although the reference to the core could support Johnson's account, the statement that something "broke off" could be taken to support Jones's account.

10

she filed her claim with the Massachusetts Commission Against Discrimination (MCAD).  See note 2, supra.  A claim for sex discrimination in a place of public accommodation, see G. L. c. 272, § 98,[5] must be filed with the MCAD "within 300 days after the alleged act of discrimination."  G. L. c. 151B, § 5.  Here, it was undisputed that, of Jones's various interactions with Johnson, only the June 2014 appointment at which she alleges he broke her tooth occurred within 300 days before Jones's MCAD filing.  The allegations based on the earlier appointments and the text messages would be time-barred unless saved by the continuing violation doctrine.

The parties and the judge proceeded on the basis that the applicability of that doctrine here was governed by Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521 (2001).  See Borne v. Haverhill Golf & Country Club, Inc., 58 Mass. App. Ct. 306, 308-309, 312-313 (2003) (applying Cuddyer to claim of sex discrimination in public accommodation).  As most pertinent here, Cuddyer provides:

> "[A] plaintiff who demonstrates a pattern of sexual
> harassment that creates a hostile work environment and that
> includes conduct within the [then applicable[6]] statute of

---

[5] There is no dispute that, for purposes of § 98, a dental office such as that operated by Johnson is a place of public accommodation.  See G. L. c. 272, § 92A.

[6] At the time Cuddyer was decided, the limitations period for filing with the MCAD was set by G. L. c. 151B, § 5, at six months.  Cuddyer, 434 Mass. at 522.  The statute was amended in

11

limitations, may claim the benefit of the continuing violation doctrine and seek damages for conduct that occurred outside the limitations period, unless the plaintiff knew or reasonably should have known that her work situation was pervasively hostile and unlikely to improve, and, thus, a reasonable person in her position would have filed a complaint with the MCAD before the statute ran on that conduct."

Cuddyer, supra at 539. Whether the doctrine applies may in some cases present issues of fact, see id., but in others, as Jones's brief acknowledges, its application may be resolved at summary judgment as a matter of law. See id. at 539-540; Borne, supra at 312.

Here, the judge discussed the summary judgment record in detail and concluded that Jones knew, after her second appointment and a late April 2014 text message exchange with Johnson, that: (1) she was being sexually harassed, (2) she was suffering emotional and physical symptoms as a result, and (3) the situation was "unlikely to improve." Cuddyer, 434 Mass. at 539. The judge determined as a matter of law that "a reasonable person in [Jones's] position would have filed a complaint with the MCAD before the statute ran on that conduct," id., and so she could not avail herself of the continuing violation doctrine.

_____

2002 to enlarge the filing period to 300 days. See G. L. c. 151B, § 5, as amended by St. 2002, c. 223, § 1.

12

On appeal, Jones argues that the judge ignored that, in response to her text message expressing discomfort about meeting Johnson socially, he assured her, "we'll keep it strictly professional." Jones's theory, as we understand it, is that she was reasonably entitled to rely on this statement as a basis to think that matters might improve and that there was no need to file a complaint. Jones points to one of the policy concerns underlying the Cuddyer rule: that the complainant should not "be forced prematurely to choose litigation as a remedy." Cuddyer, 434 Mass. at 538.

The problem for Jones is that her deposition testimony shows beyond reasonable dispute that she did not rely on Johnson's assurance. Jones testified that even after his text message, she delayed in making another appointment, and that, after some time, Johnson's office called to ask if she was returning to have her treatment completed. Jones then made an appointment to do so but, on the morning of the appointment, due to her worry about further sexual harassment, she "had a major panic attack" and "cancelled last minute." This prompted Johnson's office to call her back to give her a "sermon" to the effect that Johnson's time was "very valuable" and he was "very upset" about the last-minute cancellation. She agreed that she "felt sexually harassed after the text messages in April," and it caused her additional hair loss, anxiety, and fear. "[It]

13

just kept getting worse and worse."  Based on this record, the judge correctly ruled that Jones knew the situation was unlikely to improve and, therefore, the continuing violation doctrine did not apply.

Jones also suggests that, assuming her public accommodation claim required evidence that the sexual harassment affected the quality of the dental treatment she received, then her entire claim did not accrue until the date Johnson assertedly broke her tooth, meaning her entire claim was timely filed.  Although Johnson appeared to argue in his summary judgment memorandum that Jones was required to show an adverse effect on her dental treatment, nothing in the judge's decision suggests that he accepted this argument.  Jones herself is skeptical of the argument, Johnson disclaims it in his brief, and we reject it.[7]

Nor do we agree with Jones's claim that the trial judge accepted the argument.  Neither the jury instructions nor the special questions on the verdict slip required the jury, in order to return a verdict for Jones, to find that any harassment or discrimination also affected the quality of the dental

---

[7] Because the public accommodation law applies to a wide range of establishments (such as hotels, restaurants, and gas stations) going well beyond dental or medical facilities, see G. L. c. 272, § 92A, the law's prohibition of discrimination in the "treatment" of a person in a place of public accommodation, G. L. c. 272, § 98, clearly encompasses more than dental or medical treatment.

14

treatment Jones received.  Both the instructions and the verdict slip focused instead on whether any discrimination denied Jones "the full and equal accommodations, advantages, facilities and privileges of" the dental office as a place of public accommodation.  G. L. c. 272, § 98.  The advantages and privileges of a visit to a dental office could plainly encompass freedom from sexual harassment, even if the dental treatment itself were exemplary.

In short, even before Johnson allegedly broke Jones's tooth, his allegedly improper advances and the resulting harm to Jones caused the bulk of her claims of discrimination in a public accommodation to accrue more than 300 days before Jones's MCAD filing.  Summary judgment on those portions of her claims was therefore proper.[8]

Conclusion.  So much of the judgments as dismissed the claims of a c. 93A violation, intentional infliction of emotional distress, and battery are vacated.  In all other

---

[8] Jones argues in passing that she is entitled to a new trial on her public accommodation claim because the second motion judge's ruling on the battery claim barred her from offering evidence at trial of retaliation (in the form of intentional damage to her tooth) and resulting damages.  This claim, made without any citation to the record or supporting legal authority, does not rise to the level of appellate argument under Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019), and we decline to consider it.  See Maroney v. Planning Bd. of Haverhill, 97 Mass. App. Ct. 678, 683 n.8 (2020) (claims not adequately argued on appeal are waived).

15

respects the judgments are affirmed.  The case is remanded for further proceedings consistent with this memorandum and order.[9]

So ordered.

By the Court (Milkey, Sacks & Smyth, JJ.[10]),

Assistant Clerk

Entered:  April 22, 2024.

---

[9] Jones's request for appellate attorney's fees and costs under c. 93A is denied as premature.  Cf. Tavares v. Trial Court, 103 Mass. App. Ct. 780, 786 n.9 (2024) (request for appellate attorney's fees under G. L. c. 151B denied as premature notwithstanding favorable appellate ruling because "merits of the[] claims remain to be determined" in trial court).

[10] The panelists are listed in order of seniority.