HOUSEHOLD RETAIL SERVICES, INC., & another[1] *vs.* COMMIS-
SIONER OF REVENUE.

Suffolk. November 9, 2006. - January 16, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Taxation,* Sales tax, Abatement, Judicial review. *Statute,* Construction.
*Assignment. Debt. Words,* "Vendor."

The Appellate Tax Board correctly concluded that a financial services company
   was not entitled under the bad debt statute, G. L. c. 64H, § 1, to a
   reimbursement of sales tax on certain consumer accounts it had been as-
   signed by a retailer, where a commonsense reading of that statute and an
   examination of its purposes demonstrated that the company did not qualify
   as a "vendor" under the statute's terms, in that the company did not col-
   lect the sales tax from consumers or remit those taxes to the Com-
   monwealth, and was not engaged in selling the underlying goods to the
   consumers who later defaulted on their credit accounts. [228-233]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Peter O. Larsen,* of Florida (*Nicholas J. Rosenberg* with him)
for the taxpayers.

*Amy Spector,* Assistant Attorney General, for Commissioner
of Revenue.

MARSHALL, C.J. The sole issue in this appeal is whether a
financial services company that contractually obtained a
retailer's rights to certain consumer credit accounts is entitled to
a reimbursement of sales tax on the consumer accounts
subsequently determined to be worthless, pursuant to G. L.
c. 64H, § 33 (bad debt statute). Household Retail Services, Inc.,
and Household Bank (SB), N.A. (collectively Household), ap-
peal from a decision of the Appellate Tax Board (board) deny-
ing Household's claim that it is entitled to such relief because it

[1]Household Bank (SB), N.A.

"step[ped] into the shoes" of the assignor vendors, whose right to tax recovery under the bad debt statute is unquestioned. Resolution of this case turns on whether Household, as assignee of the accounts at issue, may be considered a "[v]endor" under the bad debt statute. See G. L. c. 64H, § 1.[2] We conclude that the board correctly held that the term "vendor" did not apply to Household, which did not collect the sales tax from the consumers or remit those taxes to the Commonwealth, and which was not engaged in selling the underlying goods to the consumers who later defaulted on their credit accounts.

*Background.* We summarize the relevant background from the joint stipulation of facts filed with and adopted by the board. Household is a consumer lender providing financing for private label credit card programs to Massachusetts retailers. Household has never registered with the Commonwealth as a vendor nor sold any tangible personal property in Massachusetts. Household entered two types of merchant agreements with Massachusetts furniture retailers (vendors) to provide financing for the vendors' customers.[3] Under the contracts, Household extended credit to the vendors' customers to enable them to purchase the vendors' goods, and acquired the rights of the vendors to receive instalment payments and to pursue collection remedies if customers

---

[2]General Laws c. 64H, § 1, defines a "[v]endor" as "a retailer or other person selling tangible personal property or services of a kind the gross receipts from the retail sale of which are required to be included in the measure of the tax imposed by this chapter." See G. L. c. 64H, § 2, requiring vendors to collect a sales tax of five per cent on gross receipts of property and services.

[3]Household and the vendor entered in either (1) a "closed-end" credit dealer (or nonrevolving loan) agreement, or (2) an "open-end" (or revolving loan) agreement. A "closed-end" loan involved a one-time sales transaction resulting in the creation of an instalment account. The vendor agreed to accept instalment payments from a customer in return for goods sold. At the time of the sale, the customer completed a loan application and the vendor submitted the application to Household for approval. On approval by Household, the vendor assigned the contract and all of the vendor's rights under the contract to Household. An "open-end" loan involved transactions in which a customer applied for credit and submitted it to Household at the time of or prior to the sale. On approval, Household issued a private label, vendor-specific credit card that the customer used for multiple transactions at the specific store. All of the vendor's rights under such contracts were acquired by Household.

defaulted.[4] The merchant agreements between the vendors and Household were "without recourse" to the vendors.

For each consumer account sold to Household under the merchant agreements, the vendors, as required, computed the tax on the full sales price of the goods at the time of sale, reported the full tax on their sales tax returns, and remitted sales tax to the Commissioner of Revenue based on the full price at which the items were sold to customers. See G. L. c. 64H, § 1. When certain customers whose credit accounts had been purchased by Household defaulted on the accounts, and when Household subsequently deemed those accounts to be worthless, Household wrote off the accounts for financial accounting and for Federal income tax purposes.

On January 16, 2001, and September 16, 2002, respectively, Household submitted to the commissioner claims for reimbursement pursuant to G. L. c. 64H, § 33. Household claimed reimbursement of $1,655,336.50, as the amount of sales tax paid on accounts determined to be worthless for the periods of January 1, 1997, through August 31, 2000, and of $448,570.24, as the sales tax paid on such accounts from January 1, 2001, through December 31, 2001. The commissioner denied the claims. Household then petitioned under formal procedure before the board. The board affirmed the decision of the commissioner in an opinion dated May 6, 2004. Household appealed, the case was entered in the Appeals Court, and we transferred the matter here on our own motion.

*Discussion.* There is no factual dispute, and we review decisions by the board for errors of law. *Towle* v. *Commissioner of Revenue*, 397 Mass. 599, 601 (1986). The taxpayer "has the burden of proving as matter of law its right to an abatement of the tax." *Circuit City Stores, Inc.* v. *Commissioner of Revenue*, 439 Mass. 629, 633 (2003), citing *Kennametal, Inc.* v. *Commissioner of Revenue*, 426 Mass. 39, 43 (1997), cert. denied, 523 U.S. 1059 (1998), and *M & T Charters, Inc.* v. *Commissioner of*

---

[4]Transactions such as these between vendors and lenders typically allow a lender to purchase contracts at a discount, reflecting the fact that the lender bears the risk that some customers will default on the contracts. See *SunTrust Bank* v. *Johnson*, 46 S.W.3d 216, 219-220 (Tenn. Ct. App. 2000). The record here does not reflect whether Household purchased the contracts at a discount.

*Revenue*, 404 Mass. 137, 140 (1989). In construing the provisions of G. L. c. 64H, we apply familiar canons. "Where the language of a statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words." *Gurley* v. *Commonwealth*, 363 Mass. 595, 598 (1973), citing *Commonwealth* v. *Thomas*, 359 Mass. 386, 387 (1971). We construe the bad debt statute to effectuate its evident purpose. See *Continental-Hyannis Furn. Co.* v. *State Tax Comm'n*, 366 Mass. 308, 309 (1974). We now turn to the words of the statute.

The bad debt statute provides that any vendor who has paid to the commissioner a tax for a sale on credit is "entitled" to reimbursement if the account "is later determined to be worthless." The statute expressly provides reimbursement only for a "vendor." G. L. c. 64H, § 33. A "[v]endor" is "a retailer or other person selling tangible personal property or services of a kind the gross receipts from the retail sale of which are required to be included in the measure of the tax imposed by this chapter." G. L. c. 64H, § 1. A "[p]erson" who may be a vendor encompasses both actual and juridical persons, including an "assignee."[5] *Id.* Household claims, in essence, that, as the assignee of the vendors' consumer credit accounts, it is entitled to assert all rights that the vendors might have asserted to the accounts, including the statutory right to a tax reimbursement under the bad debt statute.[6] We disagree.

The board concluded that, to be eligible for tax relief under the bad debt statute, the "assignee" of the "vendor" must meet the requirement of making retail sales in its own right. It reached this conclusion because a "vendor" is defined by the statute as "a person 'selling tangible property.' " Because it did not itself

[5]Household notes in passing that, while the closed-end agreements use the term "assignment," the open-end agreements state that the vendors "transferred" their rights in the accounts to Household. For purposes of this opinion, we need not resolve whether the distinction between assignment and transfer has any significance.

[6]The board concluded that Household did not have standing to pursue claims under the bad debt statute because Household was not the person assessed the sales tax, and Household was not, therefore, the "person aggrieved" under the statute. For purposes of this appeal, which raises a novel issue of statutory interpretation, we conclude that Household properly alleged an injury based on the denial of its request for reimbursement from the commissioner.

make any retail sales of tangible personal property in the Commonwealth and has not registered with the Commonwealth as a vendor, Household did not meet the statutory requirement for relief. This is a commonsense reading of the words of the bad debt statute, and one we readily accept. The contrary interpretation suggested by Household would impermissibly read the requirement to "sell[] tangible property" out of the statute any time an assignee assumed the financial rights of the seller. "The general rule of construction is that where the language of the statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words. . . . This rule has particular force in interpreting tax statutes." *Gillette Co.* v. *Commissioner of Revenue*, 425 Mass. 670, 674 (1997), quoting *Commissioner of Revenue* v. *AMI Woodbroke, Inc.*, 418 Mass. 92, 94 (1994).

The board's interpretation is buttressed by an examination of the statute's purpose. The Legislature enacted G. L. c. 64H, § 33, inserted by St. 1990, c. 121, § 56, in response to our decision in *Continental-Hyannis Furn. Co.* v. *State Tax Comm'n*, *supra*. There, we held that a taxpayer vendor of tangible personal property could not recover the portion of the sales tax paid on a sale in which the buyer received credit and later defaulted because no statute specifically authorized a recovery of the sales tax on a bad debt. *Id.* at 309. The statute thus was designed to afford some relief under the Massachusetts advance tax system to vendors who must, on behalf of the Commonwealth, compute, collect, and file sales tax returns, and remit full sales tax for each customer transaction, even if the customer subsequently defaults on its payment obligation to the vendor. It is, in essence, a statutory courtesy offered to vendors who serve as trustees for the Commonwealth's retail sales taxes. See *DaimlerChrysler Servs. N. Am.* v. *Commissioner of Revenue Servs.*, 274 Conn. 196, 206-207 (2005); *General Elec. Capital Corp.* v. *State Div. of Tax Appeals*, 2 N.Y.3d 249, 255-256 (2004).

To take advantage of relief under the bad debt statute, an entity must be a seller of tangible personal property. Household cannot avoid the requirement that it act as a vendor regarding the sale of goods and services. It is undisputed that Household

made no retail sales to the consumers whose credit accounts it purchased. It neither collected sales tax nor accounted for it to the Commonwealth or others, and indeed, unlike vendors, it has no statutory obligation to do so. See G. L. c. 64H, § 2. See also *General Elec. Capital Corp.* v. *State Div. of Tax Appeals, supra* at 256 (no entitlement to relief under State's bad debt statute where "[t]hird-party finance companies do not carry the burden of collecting sales taxes as a trustee of the State, nor does the [commissioner] have any trustee relationship with assignees . . . to provide a basis for tracking the underlying transactions").[7] The sales transactions, or taxable events, that triggered the potential application of the bad debt statute were arrangements between the vendors and their customers. The vendors were obligated to remit sales taxes on the full purchase price of the consumer goods on the completion of the sale, when title or possession to the property passed to the consumer. *Circuit City Stores, Inc.* v. *Commissioner of Revenue*, 439 Mass. 629, 633 (2003). See G. L. c. 64H, § 2. The advance tax system thus provides an orderly, reasonable, and efficient means of collecting State taxes on consumer purchases. Without more explicit direction, we will not presume that the Legislature

---

[7]Both parties have cited cases from other jurisdictions in support of their positions, each party claiming that the cases it cites have the strongest similarities to our bad debt statute. See, e.g., *DaimlerChrysler Servs. N. Am.* v. *Commissioner of Revenue Servs.*, 274 Conn. 196, 214 (2005) (right to credit not incident to contract and thus not assignable on that basis); *Chrysler Fin. Co.* v. *Department of State Revenue*, 761 N.E.2d 909, 914 (Ind. Tax Ct. 2002) (Chrysler entitled to bad debt refund); *DaimlerChrysler Servs. N. Am.* v. *State Tax Assessor*, 817 A.2d 862 (Me. 2003) (DaimlerChrysler not entitled to refund under Maine bad debt statute); *DaimlerChrysler Servs. N. Am.* v. *Department of Treasury*, 271 Mich. App. 625, 626 (2006) (sufficient nexus between finance company, retail sales, and bad debt to entitle plaintiff to relief); *Department of Taxation* v. *DaimlerChrysler Servs. N. Am.*, 119 P.3d 135, 136-139 (Nev. 2005) (following Maine Supreme Judicial Court and Connecticut Supreme Court to hold right to tax reimbursement not assignable by implication); *General Elec. Capital Corp.* v. *State Div. of Tax Appeals*, 2 N.Y.3d 249 (2004) (refunds of sales taxes paid on receipts later determined to be uncollectible not available to third-party assignee); *Puget Sound Nat'l Bank* v. *State Department of Revenue*, 123 Wash. 2d 284, 293 (1994) (assignee of instalment contracts may claim bad debt refunds as encouraging free flow of commercial paper). While we acknowledge the split of authorities among State courts, we are, of course, bound only by the law of the Commonwealth in this matter.

intended to impose on the commissioner the onerous task of enforcing the statutory obligation of the original vendor any time commercial paper of the vendor was transferred — or re-transferred — to one or more third parties.[8]

Similarly unavailing is Household's reliance on general principles of assignment law to buttress its claim for tax relief.[9] Household argues that, under the Commonwealth's common law of assignments, its status as an assignee of the subsequently worthless consumer credit accounts entitles it to assume the full panoply of the vendors' statutory rights. We agree with Household that "[c]laims for injury to property interests are clearly assignable," *Larabee* v. *Potvin Lumber Co.*, 390 Mass. 636, 640 (1983) (assignment of statutory right of recovery on tort claim), but nevertheless conclude that "principles governing the interpretation of tax credit and exemption statutes should overcome more general assignment law. . . . Tax credits are conferred by legislative grace and are not assignable as a contractual right in the absence of either explicit contractual or statutory language." *DaimlerChrysler Servs. N. Am.* v. *State Tax Assessor*, 817 A.2d 862, 866 (Me. 2003). The board concluded that "[a]n assignment [under the bad debt statute] is not to be assumed but is made only when the assignor intends to assign a present right, identifies the subject matter assigned, and explicitly divests itself of control over the subject matter assigned." Household merely purchased commercial paper (vendors' consumer credit accounts) and consequently acquired a security interest in the goods.[10] This interest is unrelated to the initial sales transaction, and is not subject to application of sales tax.[11]

---

[8]The vendor agreements at issue here, for example, contain complex accounting formulae for, among other things, charge backs, credits for returned merchandise, offsets, and the like.

[9]While we acknowledge Household's contention that statutory rights, such as the right to file for reimbursement of sales tax, are freely assignable, such rights cannot accrue by implication; the transfer or assignment must be express.

[10]Although the instalment contracts are not included in the record, a sample agreement provided in the record appendix states that the purchaser grants a security interest to the finance company and "[g]oods covered by a security interest may be taken from you [customer] if you do not pay on time."

[11]The lender's agreement with the vendors is not the same as the sales agree-

That Household is an assignee for purposes of the receipt of consumer instalment payments on goods, and for debt collection on payment defaults,[12] does not place Household within the definition of "vendor" for purposes of the bad debt statute. The merchant agreement did not so specify, and Household did not in any manner act as a trustee of the tax funds for the Commonwealth. The vendor and any assignee of its customer credit accounts remain free explicitly to provide for the assignment of recourse to the bad debt statute or to factor the absence of that benefit into the cost of doing business.

Last, Household argues that the board's interpretation of the statute creates a tax "windfall" for the Commonwealth. See *General Elec. Capital Corp.* v. *New York State Div. of Tax Appeals*, 2 N.Y.3d 249, 258-259 (2004) (no tax windfall to State where underlying sales transaction occurred separate and prior to purchase of accounts and nothing has changed status of transactions from taxable to untaxable). The premise, even if true, would not lead us to declare a tax windfall for Household by judicial fiat. As we did in *Continental-Hyannis Furn. Co.* v. *State Tax Comm'n*, 366 Mass. 308, 309 (1974), we have construed the bad debt statute according to its plain meaning. Household's plea for a reworking of the statute is more appropriately addressed to the Legislature. Finding no error of law, we affirm the decision of the Appellate Tax Board.

*So ordered.*

---

ment between the vendor and the consumer. "[T]he assignment to [the financial services company] did not purport to assign any statutory rights of the seller to a tax credit. By its own terms the assignment gave [the financial services company] only the rights of the seller 'in and to this contract.' We do not interpret the seller's statutory right to a potential tax credit to be a right 'in and to this contract.' " *DaimlerChrysler Servs. N. Am.* v. *State Tax Assessor, supra* at 866.

[12]A sample closed-end agreement reads that Household "shall own the Contracts and shall bear the credit risk for such Contracts, without recourse to" the vendor. A sample open-end agreement reads, "Each Account shall be owned by, and deemed to be the property of, Household."