LISA McGONAGLE[1] & another[2] *vs.* HOME DEPOT U.S.A., INC.

No. 07-P-1507.

Middlesex. May 19, 2008. - October 29, 2009.

Present: KATZMANN, MEADE, & SIKORA, JJ.

*Consumer Protection Act,* Unfair or deceptive act. *Taxation,* Sales tax.

In a civil action alleging that the defendant commercial retailer committed an unfair or deceptive act or practice when it charged a customer sales tax on the full price of an item rather than on the price less the value of a so-called energy coupon, a Superior Court judge properly granted summary judgment in favor of the defendant, where energy coupons were not the same as manufacturer's coupons and therefore did not qualify for the same sales tax treatment as manufacturer's coupons. [598-599]

In a civil action alleging that the defendant commercial retailer committed an unfair or deceptive act or practice within the meaning of G. L. c. 93A when it charged a customer sales tax on the full price of an item rather than on the price less the value of a manufacturer's coupon, a Superior Court judge properly granted summary judgment in favor of the defendant, where the defendant, in imposing the sales tax, carried out a legal duty and did not engage in any commercial activity within the meaning of G. L. c. 93A [599-600]; where the Attorney General's implementing regulation did not extend statutory liability to the defendant's actions, in that the sales tax code was not a provision intended to provide protection to the consumers of the Commonwealth [600-602]; and where there existed a comprehensive and specific alternate scheme of regulation of the conduct at issue, some of which was potentially inconsistent with the remedies provided by G. L. c. 93A [602-603].

This court declined to reach an issue unnecessary to its ultimate resolution of the appeal. [603]

This court exercised its discretion to deny a motion to amend a complaint to allege a new claim, where the motion came after eight years of litigation. [603-604]

This court remanded a case for consideration of an award of costs to the prevailing party, as mandated by G. L. c. 261, § 1, absent a specific and extraordinary ground for denial. [604]

CIVIL ACTION commenced in the Superior Court Department on March 21, 2001.

[1]Individually and as representative of all persons similarly situated.

[2]Paul Cass, individually and as representative of all persons similarly situated.

A motion for class certification was heard by *Wendie I. Ger-shengorn,* J., and motions for partial summary judgment were also heard by her; the remaining claim was heard by *Bruce R. Henry,* J., on motions for summary judgment.

*John P. Zavez* for the plaintiffs.

*Beth I.Z. Boland (Doreen M. Rachal* with her) for the defendant.

*Ben Robbins, Martin J. Newhouse, & Jo Ann Shotwell Kaplan,* for New England Legal Foundation & another, amici curiae, submitted a brief.

Sikora, J. The main issue presented by this appeal is whether a commercial retailer may be liable in damages for an unfair or deceptive act or practice under G. L. c. 93A, §§ 2 and 9, to a customer whom it charges an excessive sales tax. A Superior Court judge concluded that, as a matter of law, the retailer's collections of the sales tax did not constitute actionable business activity within the purpose of G. L. c. 93A, and entered summary judgment in favor of the defendant retailer and against the plaintiff customers. For the following reasons, we affirm.[3]

*Background.* 1. *Facts.* The Massachusetts sales tax code imposes upon sales at retail, "by any vendor, of tangible personal property or of services performed," an excise at a specified rate of the gross receipts of the vendor. G. L. c. 64H, § 2, as amended through St. 1990, c. 121, § 43. The vendor must pay the excise to the Department of Revenue (DOR) with an appropriate and timely tax return. G. L. c. 64H, § 2. In turn, the purchasing customer must reimburse the vendor. "[E]ach vendor in the commonwealth shall add to the sales price and shall collect from the purchaser the full amount of the tax imposed . . . and [the] tax shall be a debt from the purchaser to the vendor . . . ." G. L. c. 64H, § 3, inserted by St. 1967, c. 757, § 1. A vendor may neither refuse to collect the sales tax from its customers nor advertise that it will assume or absorb the tax. G. L. c. 64H, § 23. By a regulation effective as of May 1, 2000 (the DOR Regulation), DOR excepted from the taxable value of sales of tangible property certain reductions accomplished by cash discounts,

---

[3]We acknowledge the submission of the brief of the New England Legal Foundation as amicus curiae, joined by the Retailers Association of Massachusetts.

coupons, or rebates. 830 Code Mass. Regs. § 64H.1.4 (2000). "Cash discounts allowed and taken at the time of sale are excluded from the sales price of tangible personal property upon which the sales tax is based." 830 Code Mass. Regs. § 64H.1.4(1).[4]

Our case arises from reductions achieved by coupons. "For purposes of [the DOR Regulation], a 'manufacturer's coupon' is a coupon issued by the manufacturer, supplier or distributor of tangible personal property to be redeemed by a retail purchaser of that property. A 'retailer's coupon' is a coupon issued by a retail vendor. Generally, manufacturer's coupons and retailer's coupons that entitle the retail customer to a reduction in the sales price at the time of the sale will be treated like cash discounts [and therefore excluded from the taxable amount]. Other types of coupons will not be treated as cash discounts." 830 Code Mass. Regs. § 64H.1.4(2)(a) (citation omitted).

The defendant, Home Depot U.S.A., Inc. (Home Depot), owns and operates home improvement supplies stores in multiple States. During the course of the present litigation, it maintained thirty-six outlets in Massachusetts. Its practice has been to accept various classes of coupons in reduction of sales prices, including retailer coupons, manufacturer's coupons, gift cards, gift certificates (discontinued as of 2003), and so-called energy or "EFI" (an acronym for Energy Federation, Inc.) coupons. Regional utility companies finance programs of EFI coupons to encourage the use of energy efficient products such as light bulbs and appliances. They issue the coupons for the purchase of energy saving products of certain manufacturers. The utilities themselves do not manufacture the products or appliances favored by the coupons.

On November 29, 2000, plaintiff Lisa McGonagle purchased a package of batteries at the Home Depot store in Somerville. She used a manufacturer's one-dollar coupon. Home Depot charged her the sales tax on the full price of the package without regard to the coupon. On December 20, 2000, McGonagle purchased a second package of batteries, again with a manufacturer's one-dollar coupon, at a Home Depot store in Danvers.

[4]General Laws c. 64H, § 1, authorizes the DOR Regulation. See G. L. c. 62C, § 3. It defines taxable "sales price" as "the total amount paid by a purchaser to a vendor as consideration for a retail sale, . . . and (c) there shall be excluded (i) cash discounts allowed and taken on sales . . . ." G. L. c. 64H, § 1, as amended through St. 1991, c. 4, § 3.

Again the store charged her the sales tax on the full purchase price without a reduction for the coupon value.

On January 10, 2001, counsel for McGonagle forwarded to Home Depot's general counsel a demand letter pursuant to G. L. c. 93A, § 9(3), characterizing the sales tax overcharge as an unfair or deceptive act or practice and demanding as class-wide relief for McGonagle and all similarly situated persons (identifiable through Home Deport records) a refund of the sales tax overcharge with interest or twenty-five dollars (whichever might be greater). In a timely responsive letter, counsel for Home Depot offered to pay McGonagle the greater of the overcharge or twenty-five dollars and her reasonable attorney's fees. He reported also that Home Depot's preliminary investigation showed that, during the period since the implementation of the DOR Regulation, it had collected Massachusetts manufacturer's coupons with face values totaling $4,080, and had overcharged sales taxes of about $204. He reported also that the company would retrain its cashiers to perform the appropriate key strokes on the register system for compliance with the DOR Regulation. McGonagle rejected the offer.

On or about February 10, 2001, plaintiff Paul Cass purchased several energy-efficient light bulbs from the Home Depot outlet in Quincy. He obtained several EFI five-dollar coupons from a dispenser in the store and submitted them toward payment for the bulbs. Home Depot applied the coupons' values to the purchase price, but still charged him the sales tax on the price with no reduction of the coupon amounts.[5] Cass did not call the overcharge to the attention of Home Depot personnel or send a subsequent c. 93A demand letter to the company.

On February 16, 2001, Home Depot forwarded to all Massachusetts store managers, operation managers, and bookkeeping associates a policy memorandum announcing the need to comply with the DOR Regulation and specifying a six-step register procedure for implementation of the manufacturer's coupon reduction. The memorandum set a training and compliance deadline of March 26, 2001.[6]

---

[5]Cass used six five-dollar coupons to reduce the original price from $50.40 to $20.40, but paid the sales tax on a purchase of $50.40.

[6]The memorandum specifically observed that the new law and procedure did not extend to "energy coupons."

On March 21, 2001, McGonagle and Cass commenced the present action in Superior Court as proposed representatives of the class of customers experiencing the sales tax overcharge. The sole theory and count of liability was the claim that the overcharge constituted an unfair or deceptive practice against customers. They sought statutory damages of at least twenty-five dollars per customer, plus trebling and reasonable attorney's fees pursuant to c. 93A, § 9(3).

2. *Procedural history.* In August of 2002, toward the close of the extended discovery period (of approximately seventeen months through August 31, 2002), the parties filed cross motions for summary judgment on the issue of liability. A judge of the Superior Court concluded, on the undisputed facts, that excessive sales tax collections from purchases using manufacturer's coupons did constitute unfair or deceptive conduct within the meaning of G. L. c. 93A, § 2.[7]

In August of 2003, in response to the plaintiffs' motion, a second Superior Court judge certified two subclasses pursuant to Mass.R.Civ.P. 23(a), 365 Mass. 767 (1974). One consisted of customers overcharged as a result of their use of manufacturer's coupons, and the other of customers overcharged as a result of their use of EFI coupons. No opinion accompanied the ruling.

In December of 2004, the second judge granted summary judgment in favor of Home Depot and against the EFI subclass on the ground that the DOR Regulation did not furnish a tax reduction to holders of EFI coupons.

Finally, in July of 2007, a third Superior Court judge reconsidered the question of Home Depot's liability for overcharge on the manufacturer's coupon transactions. In light of the intervening decision of *Darviris* v. *Petros*, 442 Mass. 274, 277-284 (2004), he concluded that c. 93A liability could not apply to Home Depot's role as a sales tax collector. He vacated the earlier contrary ruling and entered summary judgment against the manufacturer's coupon subclass. Both subclasses appeal from the final judgment. Home Depot cross-appeals from the elements of the final judgment denying its costs and, in an abundance of caution, from the certification of the two subclasses despite the superseding liability judgments against each.

---

[7] As we shall discuss below, the first motion judge did not have the benefit of subsequent definitive case law on the issue.

*Discussion.* With the same record as the motion judges, the reviewing court examines de novo the allowance of summary judgment. See *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 123 n.1 (1997); *Zielinski* v. *Connecticut Valley Sanitary Waste Disposal, Inc.*, 70 Mass. App. Ct. 326, 334 (2007). In this instance, the material facts are not disputed. Our work is the correct application of the law.

1. *The EFI coupons claim.* On appeal the plaintiffs make the conclusory argument that the genuine nature of the EFI coupon is identical to that of the manufacturer's coupon, and the EFI coupon therefore qualified for the same sales tax treatment. The DOR Regulation restricted taxable sales price reductions to "manufacturer's" and "retailer's" coupons and explicitly excluded "[o]ther types of coupons." 830 Code Mass. Regs. § 64H.1.4(2). In her consideration of the parties' cross motions for partial summary judgment, the second Superior Court judge prudently invited DOR to submit a memorandum of its view as amicus curiae.

DOR reasoned that the EFI coupons did not qualify as manufacturer's or retailer's coupons because their originator was a third party contributing (by redemption of its coupons) to the full retail price and "gross receipts" of Home Depot for the purchase in question. In contrast, a manufacturer's or retailer's coupon discount reduced the gross receipts. In the words of DOR, "a multitude of complex marketing arrangements were being used between manufacturers, wholesalers, and retailers that ultimately reduced the cost of goods sold, and these reductions were passed along to the retail customer much like conventional discounts" (footnotes omitted). While all the discounts might reach the customer indistinguishably, the retailer and manufacturer coupons effectively lowered the gross receipts of the vendor as the amount subject to the sales excise. The motion judge adopted DOR's rationale as the ground for summary judgment upon the EFI issue.

The ruling was sound. It followed the plain language of the DOR Regulation, respected the special competence of the authoring agency, and rested on a specific explanation from that agency. See, e.g., *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 782 (1980); *MCI WorldCom Communications, Inc.* v. *Department of Telecommunications & Energy*, 442 Mass. 103, 112 (2004); *Fioravanti* v. *State Racing Commn.*, 6 Mass.

App. Ct. 299, 302 (1978) (all applying the premise that, in the absence of clear error, an agency's interpretation of its own rules is entitled to deference overcome only by arbitrary or unreasonable application).

2. *The manufacturer's coupon claim.* The third Superior Court judge reexamined the applicability of c. 93A liability to Home Depot's collection of sales tax receipts in light of the decision of *Darviris*, 442 Mass. 274.[8] In that case the court reasoned that a patient's claim of unfair or deceptive conduct against her physician for his performance of an undesired surgical procedure could not qualify as an unfair or deceptive act under c. 93A because it did not constitute a commercial component of medical practice, because the Attorney General's implementing regulation could not extend statutory liability to noncommercial conduct, and because an alternate statutory scheme preemptively covered the plaintiff's grievance. *Id.* at 277-284. Since the third judge's disposition, the decision of *Feeney* v. *Dell, Inc.*, 454 Mass. 192, 211-213 (2009), has applied those criteria to the claim of a business consumer that a defendant vendor of computer equipment unfairly or deceptively collected unwarranted sales tax revenues under cover of its optional service contracts. The court's reasoning that the consumer had thus far failed to state a c. 93A claim reinforces the correctness of the judgment in this case. Each of the criteria applied to the c. 93A claims in *Darviris* and *Feeney* operates forcefully against the allegations here.

a. *Commercial activity.* Actionable c. 93A conduct must occur "in a business context." *Lantner* v. *Carson*, 374 Mass. 606, 611 (1978). While the purchases here might fit loosely within that phrase, the more specific test established by the *Darviris* decision is that the misconduct have an entrepreneurial, commercial

[8]The first Superior Court judge had allowed the plaintiffs' motion for summary judgment on the issue of liability on November 26, 2002. That ruling appears to cover both the EFI and manufacturer's coupon claims. The Supreme Judicial Court issued the *Darviris* decision on August 9, 2004. It appears to have caused, as motions for reconsideration, the reexamination of the EFI coupon ruling (by the second judge in December of 2004) and the reexamination of the manufacturer's coupon ruling (by the third judge at a later date). An intervening development of the law would constitute a "change of circumstance" justifying reconsideration. See *Peterson* v. *Hopson*, 306 Mass. 597, 599 (1940); *King* v. *Globe Newspaper Co.*, 400 Mass. 705, 707 (1987), cert. denied, 485 U.S. 940 and 485 U.S. 962 (1988); *Barbosa* v. *Hopper Feeds, Inc.*, 404 Mass. 610, 622 (1989).

or business purpose, that it serve the actor's financial benefit or gain. 442 Mass. at 278-281. The formulation in *Feeney* is that the challenged conduct must be "motivated by business or personal reasons." 454 Mass. at 212-213, quoting from *Poznik* v. *Massachusetts Med. Professional Ins. Assn.,* 417 Mass. 48, 52 (1994). Conduct performed as a statutory duty will not have the character of business or personal motivation and will not be actionable under c. 93A. *Feeney, supra* at 212-213, and cases cited.[9]

These criteria put Home Depot's conduct well outside the perimeter of c. 93A. It is undisputed that the company sought and received no profit from the imposition of the sales tax. It transmitted to DOR all tax payments received from the plaintiffs and from the classes whom they proposed to represent. It carried out a legal duty and not a profit-making exercise. The Legislature commanded it to perform the quintessential governmental function of tax collection.[10]

b. *The Attorney General's regulation.* General Laws c. 93A, § 2(*a*), inserted by St. 1967, c. 813, § 1, declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce"; G. L. c. 93A, § 2(*c*), then provides, "The attorney general may make rules and regulations interpreting the provisions of subsection 2(*a*) of this chapter." The Attorney General has, inter alia, defined an act or practice as a violation if:

> "It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or

[9]Intentionally gainful misconduct has been a central category of c. 93A wrongdoing. One illustrative genre has been the deliberate breach of a contract for a party's gain. See, e.g., *Wang Labs., Inc.* v. *Business Incentives, Inc.,* 398 Mass. 854, 857 (1986); *Anthony's Pier Four, Inc.* v. *HBC Assocs.,* 411 Mass. 451, 474 (1991). Another has been coercive conduct designed to extort a benefit or advantage from a business or bargaining opponent. See, e.g., *Atkinson* v. *Rosenthal,* 33 Mass. App. Ct. 219, 226 (1992); *Community Builders, Inc.* v. *Indian Motocycle Assocs.,* 44 Mass. App. Ct. 537, 557-558 (1998).

[10]In this role, the retail vendor resembles an agent of the State. "[U]nder the Massachusetts advance tax system[,] vendors . . . must, *on behalf of the Commonwealth,* compute, collect, and file sales tax returns, and remit full sales tax for each customer transaction . . . . [V]endors . . . *serve as trustees for the Commonwealth's retail sales taxes." Household Retail Servs., Inc.* v. *Commissioner of Rev.,* 448 Mass. 226, 230 (2007) (emphasis supplied).

any political subdivision thereof *intended to provide the consumers of this Commonwealth protection . . . .*"

940 Code Mass. Regs. § 3.16(3) (1993) (emphasis supplied) (the Attorney General's Regulation). The plaintiffs characterize the sales tax code and DOR's pursuant regulations as "statutes, rules [and] regulations . . . meant for the protection of the public's health, safety, or welfare" and the excessive collection by Home Depot as a violation of those standards as incorporated into c. 93A, § 2, by the Attorney General's Regulation. The contention is that excessive collection is a violation of the public welfare. The motion judge correctly rejected it.

The plaintiffs' contention ignores the final limiting phrase of the Attorney General's Regulation. The violated legal provision must be one "intended to provide the consumers of this Commonwealth protection." *Ibid.* The sales tax code and its regulations intend to raise revenues for the government and to collect them fairly from purchasers. The relationship reaches between the government and the taxpayer and not between the retailer and the purchaser. As discussed below, the government furnishes that relationship with certain remedies for an aggrieved taxpayer.

More fundamentally the argument misstates the character of a regulation. An axiom of administrative law is that a regulation cannot expand the boundaries of its enabling statute; it can only fill in the landscape defined by the statute. See, e.g., *Bureau of Old Age Assistance of Natick* v. *Commissioner of Pub. Welfare,* 326 Mass. 121, 124 (1950); *Telles* v. *Commissioner of Ins.,* 410 Mass. 560, 565 (1991); *Massachusetts Hosp. Assn.* v. *Department of Med. Security,* 412 Mass. 340, 345-347 (1992). By the plaintiffs' reasoning, the Attorney General's Regulation would siphon into the province of c. 93A a bottomless reservoir of ulterior public health, safety, and welfare infractions regulated by separate programs of the police power. The language of the Attorney General's Regulation does not attempt that expansion. The effort would be ultra vires. See *Darviris,* 442 Mass. at 274, quoting from *American Shooting Sports Council, Inc.* v. *Attorney Gen.,* 429 Mass. 871, 875 (1999) (G. L. c. 93A, § 2[*c*], "limits the Attorney General's rule-making power to be within the concepts of deception or unfairness, as guided by administrative

and judicial interpretation of the [Federal Trade Commission] Act").

3. *Occupation of the field by the sales tax provisions.* A final indicator of the inapplicability of c. 93A liability would be the presence of a comprehensive and specific alternate scheme of regulation of the targeted conduct in actual or potential conflict with the standards and remedies of the chapter. See *Darviris, supra* at 282-284 (medical malpractice statute precluded a claim under c. 93A). See, e.g., *Reiter Oldsmobile, Inc. v. General Motors Corp.*, 378 Mass. 707, 711 (1979) (remedies under c. 93A are unavailable because G. L. c. 93B creates coherent and more specific standards and measures for the business practices among motor vehicle manufacturers, distributers, and dealers); *Fleming v. National Union Fire Ins. Co.*, 445 Mass. 381, 385-386 (2005) (comprehensive nature of the workers' compensation provisions of G. L. c. 23E and G. L. c. 152 renders c. 93A unavailable to covered injured employees).

Here, pertinent statutes and regulations administered by DOR afford an aggrieved sales tax payer primary recourse potentially inconsistent with c. 93A remedies. A person seeking refund of an overpayment (such as the plaintiffs) may apply for an abatement within two years of the payment of the tax, G. L. c. 62C, § 36, third par.; G. L. c. 62C, § 37, first par. Interest on the refund will depend on a Federal short-term rate, see G. L. c. 62C, § 40, first par., typically far below the rate of twelve percent authorized for compensatory damages by Massachusetts law. See G. L. c. 231, §§ 6B, 6C. The remedies provided for refund "shall be exclusive, whether or not the tax is wholly illegal." G. L. c. 62C, § 41, inserted by St. 1976, c. 415, § 22. These restrictive provisions reflect the Commonwealth's reliance on, and desired preservation of, taxes once collected.

By contrast, c. 93A contemplates disputes between private parties; permits a period of four years for commencement of suit, G. L. c. 260, § 5A; allows for interest at twelve percent, G. L. c. 231, §§ 6B, 6H, and G. L. c. 235, § 8; permits minimum and multiple damages, G. L. c. 93A, § 9(3), (3A); and authorizes the recovery of reasonable attorney's fees, G. L. c. 93A, § 9(3A), (4). The conflicting ends and means of the two statutory systems support the inference that the Legislature did not intend their

application to the same conduct. The specific tax code provisions should preempt the general c. 93A provisions. See *Reiter Oldsmobile, Inc., supra.*

4. *Certification of the subclasses.* The parties have devoted substantial appellate briefing to the validity of the certification of the subclasses by the second Superior Court judge before the entries of summary judgment against each of them. Our affirmance of those judgments eliminates the need to address the validity of the certification. The dissolution of the action means also the dissolution of the subclasses.[11]

5. *Plaintiff's request to amend.* Since oral argument and the issuance of *Feeney*, 454 Mass. 192, on July 2, 2009, the plaintiffs by letter have requested permission to amend their original complaint so as to allege and pursue a claim of financial motive and conduct against Home Depot by reason of its failure to comply with the DOR Regulation until approximately eleven months after its effective date. The Supreme Judicial Court granted such leave to the plaintiffs in that case. *Id.* at 213-214.

We decline to follow that course. This case stands in a far different procedural posture. In *Feeney, supra,* the plaintiffs never advanced beyond a Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), motion for dismissal of their c. 93A claim by reason of their forced acceptance of arbitration under a contractual clause ultimately ruled invalid. Here the plaintiffs advanced through more than four years of discovery, extensive motions practice, and multiple summary judgment battles. They had abundant opportunity to allege a business motive by amendment and to pursue its proof by discovery. They never did so. They presented no genuine issue of material fact of motive in the summary judgment proceedings in the Superior Court. Nor did they present any contention of it in their appellate arguments, written or oral, an

---

[11]If a decision were necessary, we would vacate the certification and remand the question for reassessment. Certification is a matter for the sound discretion of the trial court. *Weld* v. *Glaxo Wellcome Inc.*, 434 Mass. 81, 84-85 (2001). From the record we cannot tell whether the certification would have the support of numerosity, common issues of fact, typicality of claims, and fair representation required by Mass.R.Civ.P. 23(a); and of the predominance of common issues of law and fact and the superiority of the class action mechanism required by Mass.R.Civ.P. 23(b), 365 Mass. 767 (1974). The composition of the subclasses; their duration, if any, beyond March 26, 2001; and the discoverability of approximate damages, if any, appear unresolved.

omission amounting to waiver. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Contrast *Feeney, supra* at 213, referring to a belated suggestion of such a theory in the claimant's appellate brief.

Amendments should be reasonably timely. Extreme tardiness and the resulting prejudice to the opposing party warrant denial. See, e.g., *Castellucci* v. *United States Fid. & Guar. Co.,* 372 Mass. 288, 292 (1977); *Mathis* v. *Massachusetts Elec. Co.,* 409 Mass. 256, 264-265 (1991); *DiVenuti* v. *Reardon,* 37 Mass. App. Ct. 73, 77 (1994). Eight years of litigation are enough. We exercise our discretion to deny the request to amend.

6. *Trial court costs.* The final judgment in the Superior Court favored the defendant but "without costs." General Laws c. 261, § 1, mandates the award of ordinary costs to the prevailing party. Accord Mass.R.Civ.P. 54(d), as appearing in 382 Mass. 821 (1980) (authorizing costs "as of course to the prevailing party"). For definition and discussion of ordinary taxable costs, see *Waldman* v. *American Honda Motor Co.,* 413 Mass. 320, 322 (1992). Unless the Superior Court judge identifies a specific and extraordinary ground for denial, Home Depot shall be entitled to the award of its ordinary, itemized, verified costs.

*Conclusion.* We affirm the portion of the judgment granting summary judgment to the defendant. We reverse the portion of the judgment denying the defendant its costs and remand the case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*