NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-614                                        Appeals Court

MARK BEAUCHESNE[1]  vs.  NEW ENGLAND NEUROLOGICAL ASSOCIATES, P.C.


No. 19-P-614.

Essex.     March 12, 2020. - October 29, 2020.

Present:  Sullivan, Henry, & Hand, JJ.


Consumer Protection Act, Availability of remedy, Class action,
     Trade or commerce, Unfair or deceptive act.  Contract,
     Performance and breach, Implied covenant of good faith and
     fair dealing.  Statute, Construction.  Practice, Civil,
     Consumer protection case, Class action, Motion to dismiss.



Civil action commenced in the Superior Court Department on
December 22, 2017.

     Motions to dismiss and for class certification were heard
by Shannon Frison, J.


     The case was submitted on briefs.
     Walter H. Jacobs & Alexandria A. Jacobs for the plaintiff.
     Richard J. Yurko & Anthony B. Fioravanti for the defendant.


     HENRY, J.  The plaintiff, Mark Beauchesne, brought this

putative class action against the defendant, New England

_____

     [1] On behalf of himself and others similarly situated.

Neurological Associates, P.C. (NENA), alleging that NENA overcharged him and others for certified copies of their medical records and bills. General Laws c. 111, § 70, and G. L. c. 112, § 12CC, limit how much hospitals, clinics, and health care providers may charge patients for copies of their medical records. This appeal raises the question whether those statutes apply to certified copies of medical records. Because we conclude that they do, and because we further conclude that G. L. c. 93A may provide an avenue for relief, we vacate so much of the judgment as dismissed Beauchesne's claim for violation of G. L. c. 93A and denied class certification.

Background. We recite the facts as alleged in the first amended complaint, which we accept as true in reviewing a motion to dismiss, Iannacchino v. Ford Motor Co., 451 Mass. 623, 625 n. 7 (2008), supplemented by factual information contained in documents referred to or relied upon in the operative complaint. See Kilnapp Enters. v. Massachusetts State Auto. Dealers Ass'n, 89 Mass. App. Ct. 212, 213-214 (2016) ("A reviewing court, like the judge initially evaluating and ruling upon a motion to dismiss, is entitled to consider materials not appended to the complaint, but referenced or relied upon in the complaint").

On November 20, 2017, Beauchesne's attorney sent NENA a request for "certified copies of [Beauchesne's] medical records and bills regarding [an] automobile accident that occurred on or

about September 16, 2017," along with an authorization signed by Beauchesne. The authorization stated that "[t]he information is to be used FOR LEGAL PURPOSES," and that it was a request for "COMPLETE CERTIFIED COPIES OF RECORDS AND BILLS" for treatment dates from September 1, 2017, to November 20, 2017. NENA responded by letter, stating that "[t]he fee for retrieval and copying of records is $45.00," that the fee included updates "as appropriate, or as requested," and that it would "forward the requested records/bills as soon as payment is received." After Beauchesne's attorney paid forty-five dollars using Beauchesne's funds, NENA sent two pages of medical records and a one-page bill, along with an affidavit "certify[ing] that the attached are complete and accurate copies of the medical records and/or bills on file regarding [Beauchesne]." The affidavit stated that it was provided pursuant to G. L. c. 233, § 79G, which addresses the admissibility of medical records and bills in the courts of the Commonwealth.

Beauchesne then brought the underlying complaint, alleging that he, and others similarly situated, had been overcharged for certified copies of their medical records and bills. Nena filed a motion to dismiss. NENA argued, and the motion judge agreed, that Beauchesne's claims fail because certified copies of medical records are not addressed by G. L. c. 111, § 70, and are instead addressed by G. L. c. 233, § 79G.

Discussion. Beauchesne asserts that in December 2017, the reasonable fee, as defined by G. L. c. 111, § 70, for copies of medical records included a base fee of $23.89, along with a fee of eighty-one cents per page for the first one hundred pages of records provided, and forty-one cents for each page provided in excess of one hundred pages.[2] Thus, Beauchesne contends that he should have been billed and required to pay only $26.81, including postage of forty-nine cents, resulting in an unlawful overcharge by NENA of $18.19 (forty-five dollars less $26.81). While Beauchesne concedes that NENA could have charged him an additional fee for the certification, he contends that the forty-five-dollar charge was solely for the retrieval and copying of his records and did not include a fee for the certification.

1.  The reasonable fee for medical records. General Laws c. 112, § 12CC, applies to any "health care provider who maintains records for a patient treated or examined by such provider" and states that "upon request[,] a copy of such patient's records shall be furnished upon payment of a reasonable fee, as defined in [G. L. c. 111, § 70]." General Laws c. 111, § 70, which otherwise applies to records kept by

---

[2] These amounts include adjustments to reflect the consumer price index for medical care services, as permitted by the statute.

hospitals and clinics,[3] defines "a reasonable fee" to "mean a base charge of not more than $15 for each request . . . ; a per page charge of not more than $0.50 for each of the first 100 pages . . . ; and not more than $0.25 per page for each page in excess of 100 pages." This reasonable fee may be "adjusted to reflect the consumer price index for medical care services." Id. "A hospital or clinic may also charge an additional fee to cover the cost of postage, other priority mailing and preparation of an explanation or summary of the hospital or clinic medical record if so requested." Id.

Whether G. L. c. 111, § 70, and G. L. c. 112, § 12CC, apply to certified copies of medical records is a question of statutory interpretation that we review de novo. See Chin v. Merriot, 470 Mass. 527, 531 (2015). "Under well-established principles of statutory construction, a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated" (quotation and

_____

[3] NENA asserts, without providing further explanation, that it is not a hospital or a clinic subject to G. L. c. 111, § 70, but it does not dispute that it is a health care provider subject to G. L. c. 112, § 12CC.

citation omitted). Id. at 532. In conducting this analysis, we "examine the pertinent language in the context of the entire statute." Id.

Nothing in either G. L. c. 111, § 70, or G. L. c. 112, § 12CC, limits their applicability to uncertified copies of medical records. Rather, both statutes apply to copies of medical records in general, without limitation, and we will not read words into a statute that are not there. See Anderson St. Assocs. v. Boston, 442 Mass. 812, 817 (2004) (rejecting argument that would have required court to read words into statute that were not there). Nor is there any indication that the Legislature intended to address access to certified copies of medical records in G. L. c. 233, § 79G, as NENA argues. General Laws c. 233, § 79G, pertains to a different subject: the requirements for offering medical records and bills in evidence in court proceedings. It does not pertain to access to medical records and bills or specify fees for acquiring certified copies of those records; instead, it works in harmony with G. L. c. 111, § 70. We thus conclude that G. L. c. 111, § 70, and G. L. c. 112, § 12CC, apply to certified copies of medical records.

It is true that the fee provisions contained in G. L. c. 111, § 70, mention copies in general and that the "meaning of a general term . . . must be limited so as not to include

matters that . . . do not fairly come within [the] spirit and intent of the Legislative enactment" (quotation and citation omitted). Aviksis v. Murray, 87 Mass. App. Ct. 141, 145 (2015). Certified copies do, however, come within the spirit and intent of G. L. c. 111, § 70, and G. L. c. 112, § 12CC, as evident from the fact that both statutes also govern the provision of copies in circumstances where certified copies are required, such as when responding to a subpoena.[4] Thus, it is simply not accurate that neither statute applies to certified copies.

Lastly, our interpretation is also consistent with the fee structure, itself. The reasonable fee includes a base fee and a per-page fee, and it also includes an additional fee "to cover the cost of . . . preparation of an explanation or summary of the hospital or clinic medical record if so requested." G. L. c. 111, § 70. This fee structure thus acknowledges that there

---

[4] General Laws c. 111, § 70, requires a hospital or clinic served with a subpoena for medical records to "deliver certified copies of the subpoenaed records in its custody to the court or place of hearing designated on the subpoena" (emphasis added). Both statutes also prohibit any fee from being charged "if the record is requested for the purpose of supporting a claim or appeal under any provision of the Social Security Act or any [F]ederal or [S]tate financial needs-based benefit program." G. L. c. 111, § 70. G. L. c. 112, § 12CC. In 1992, when the Legislature amended the statutes to include this provision, see St. 1992, c. 311, the Social Security Administration specified that "the copy or summary [of the medical records] should be certified as accurate," 20 C.F.R. § 416.913(a)(5) (1992). We presume the Legislature was aware of the state of the law at that time. See Globe Newspaper Co., petitioner, 461 Mass. 113, 117 (2011).

may be times when patients' requests for their records will entail more work than simply retrieving and copying those records. When a hospital, clinic, or health care provider must prepare an explanation or a summary of a patient's records, it may charge an additional fee to cover the cost of that work. Providing a certified copy falls squarely into that category, as a certified copy is simply a copy that contains an attestation, usually by the officer responsible for keeping the original, that the copy is an exact reproduction of the original. See Black's Law Dictionary 410 (10th ed. 2014).

NENA alternatively argues that it was permitted under G. L. c. 111, § 70, and G. L. c. 112, § 12CC, to charge an additional fee for the certification, and that it was therefore justified in charging Beauchesne forty-five dollars. Where this case was decided on a motion to dismiss, however, we must assume the facts as alleged are true, and the complaint alleges that NENA charged Beauchesne forty-five dollars solely for the retrieval and copying of his medical records and bills.[5] We cannot assume, as NENA asks us to do, that the forty-five-dollar charge included a reasonable fee for the certification. Whether NENA did, in fact, charge for the certification, what the amount of

---

[5] These allegations are supported by the bill that NENA sent Beauchesne, which stated that "[t]he fee for retrieval and copying of records is $45.00" (emphasis added).

that fee could have been, whether NENA needed to inform Beauchesne of that fee, and whether NENA did, at least implicitly, inform Beauchesne of that fee, see note 11 infra, are not questions that are properly before us in this appeal.

2. Beauchesne's claims. We next address whether any of Beauchesne's asserted claims provide an avenue for relief. Beauchesne's notice of appeal limits his appeal to the dismissal of his claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of G. L. c. 93A, § 2 (a), and the denial of his motion for class certification.[6]

a. Breach of contract and of the implied covenant of good faith and fair dealing. Beauchesne first argues that any overcharge here may be remedied through a claim for breach of contract.[7] We disagree. Even if we were to assume that the communications between Beauchesne's attorney and NENA were

---

[6] The notice of appeal does not include Beauchesne's claim asserting a violation of G. L. c. 111, § 70. Nonetheless, his appellate brief argues that § 70, contains an implied private cause of action. While this argument is waived, it also has no merit. "[C]lear legislative intent is necessary to infer a private cause of action from a statute," and there is nothing in the statute or otherwise from which we could infer a private cause of action. Sullivan v. Chief Justice for Admin. & Mgt. of the Trial Court, 448 Mass. 15, 38 (2006), quoting Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 543 (1998).

[7] Whether NENA did, in fact, overcharge Beauchesne is not before us in this appeal.

sufficient to form a contract and that the fee charged violated
the statutes, the issue would become whether the contract was
thereby rendered void -- not whether the contract was breached.
See Baltazar Contrs., Inc. v. Lunenburg, 65 Mass. App. Ct. 718,
720-721 (2006) (contract made in violation of statutory terms
void if statute expressly so provides, or if necessary to
accomplish purpose of statute).[8]  The issue whether the contract
should be rendered void, however, is not before us in this
appeal.[9]

Beauchesne fares no better by framing his claim as one for
breach of the implied covenant of good faith and fair dealing.
The implied covenant "concerns the manner of performance" and

---

[8] We do not address whether Beauchesne may have had
alternative equitable claims for relief that have not been
raised on appeal.

[9] Beauchesne argues that the contract implicitly
incorporated the statutes, but he has not offered persuasive
legal support for the proposition that he may bring a breach of
contract claim based on violation of those statutes.  While we
recognize that the Supreme Judicial Court has said that, "[a]s a
general rule, the law existing at the time an agreement is made
necessarily enters into and becomes part of the agreement,"
Feakes v. Bozyczko, 373 Mass. 633, 636 (1977), that statement
was made in the context of declaring the parties' rights and
obligations regarding the payment of child support to a child's
"age of majority."  The term "age of majority" was a statutorily
defined term that was changed after the parties entered into the
agreement.  Id. at 637-638.  Whether Beauchesne may bring a
breach of contract claim based on alleged statutory violations
presents different concerns that we do not address further given
Beauchesne's failure to provide legal support for the
proposition.

"exists so that the objectives of the contract may be realized."
Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 385, cert.
denied sub nom. Globe Newspaper Co. v. Ayash, 546 U.S. 927
(2005). Breaches of the implied covenant have been found when
one party has done something to "destroy[] or injur[e] the right
of the other party to receive the fruits of the contract"
(citation omitted). Weiler v. PortfolioScope, Inc., 469 Mass.
75, 82 (2014). See, e.g., Parker v. EnerNOC, Inc., 484 Mass.
128, 137 (2020) (breach of implied covenant found where employer
fired employee to avoid paying commissions she would have
otherwise earned); Motsis v. Ming's Supermkt., Inc., 96 Mass.
App. Ct. 371, 375 (2019) (breach of implied covenant found where
commercial landlord failed to make structural repairs or
cooperate with tenant in permit application process). Passing
over whether NENA violated its obligation to charge a reasonable
fee, as that term has been defined by the Legislature, such a
violation would not have prevented Beauchesne from receiving the
fruits of the contract. Beauchesne's allegation that NENA
breached the implied covenant by charging an unreasonable fee is
instead an attempt to invoke the implied covenant to "create
rights and duties not otherwise provided for in the existing
contractual relationship," which he may not do. Ayash, supra,
quoting Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.,
441 Mass. 376, 385 (2004).

b.   Violation of G. L. c. 93A.   Beauchesne next argues that any overcharge here may be remedied through c. 93A.   We describe NENA's arguments regarding Beauchesne's c. 93A claim in detail, as those arguments frame our discussion.   NENA argues that the alleged overcharge cannot be remedied through c. 93A because the Department of Public Health and the Board of Registration in Medicine may discipline those who violate G. L. c. 111, § 70, and G. L. c. 112, § 12CC, and that the Legislature thereby "left enforcement of [those] statute[s] to a separate regulatory regime."   NENA relies on McGonagle v. Home Depot, U.S.A., Inc., 75 Mass. App. Ct. 593, 602 (2009), which involved sales tax overcharges.   In that case, we concluded that the plaintiff could not remedy the sales tax overcharges through c. 93A, in part because "pertinent statutes and regulations administered by [the Department of Revenue] afford an aggrieved sales tax payer primary recourse potentially inconsistent with c. 93A remedies." McGonagle, supra.[10]   According to NENA, McGonagle stands for the broad proposition that "where, as here, the Legislature has left enforcement of a statute to a separate regulatory regime, a

---

[10] As we explained, "A person seeking refund of an overpayment . . . may apply for an abatement within two years of the payment of the tax.   Interest on the refund will depend on a Federal short-term rate, typically far below the rate of twelve percent authorized for compensatory damages by Massachusetts law.   The remedies provided for refund shall be exclusive, whether or not the tax is wholly illegal" (quotation and citations omitted).   McGonagle, 75 Mass. App. Ct. at 602.

claim pursuant to c. 93A is unavailable."  This interpretation of McGonagle is inconsistent with c. 93A and other case law.

Chapter 93A, § 2 (a), declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  "The [A]ttorney [G]eneral may make rules and regulations interpreting [c. 93A, § 2 (a)]." G. L. c. 93A, § 2 (c).  One such regulation, 940 Code Mass. Regs. § 3.16(3) (1993), provides that any act or practice is a violation of c. 93A, § 2 (a), if "[i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare . . . intended to provide the consumers of this Commonwealth protection."  This regulation, however, is "bound by the scope of c. 93A, § 2 (a)," and "a violation of a law or regulation . . . will be a violation of c. 93A, § 2 (a), only if the conduct leading to the violation is both unfair or deceptive and occurs in trade or commerce."  Klairmont v. Gainsboro Restaurant, Inc., 465 Mass. 165, 174 (2013).

Although violations of laws and regulations are not always violations of c. 93A, § 2 (a), such violations may -- and frequently do -- serve as the bases of c. 93A claims if the underlying conduct is unfair or deceptive.  This is true even when some other mechanism exists for enforcing the statute or regulation.  See Hershenow v. Enterprise Rent-A-Car Co. of

Boston, 445 Mass. 790, 795 (2006) (rejecting argument that where statute governing car rental agreements "provides for civil fines and a public enforcement action[,] . . . private relief for violations of that statute is not available" through c. 93A); Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. 60, 61-62 (1999) (rejecting argument that c. 93A claim should have been dismissed because agency had primary jurisdiction). For example, State building code violations may result in liability under c. 93A, see Klairmont, 465 Mass. at 174-176, even though "[t]he building commissioner or inspector of buildings" is charged with the responsibility of "administering and enforcing the [S]tate building code" for cities and towns, G. L. c. 143, § 3. The same is true of ticket resale price violations, see Herman v. Admit One Ticket Agency LLC, 454 Mass. 611, 618 (2009), even though the Division of Professional Licensure may investigate the affairs of anyone licensed to resell tickets to determine compliance with applicable laws, see G. L. c. 140, § 185E.

McGonagle, is not to the contrary. In McGonagle, 75 Mass. App. Ct. at 602, our conclusion that sales tax overcharges could not be remedied through c. 93A did not rest on the mere existence of some other enforcement mechanism. Rather, we held that sales tax overcharges could not be remedied through c. 93A because the particular enforcement mechanism at issue in sales

tax overcharges afforded an aggrieved person "recourse potentially inconsistent with c. 93A remedies." McGonagle, supra. We noted specific tax code provisions that were inconsistent with c. 93A remedies, including the fact that a taxpayer seeking a refund had to apply for an abatement within two years, whereas the statute of limitations for c. 93A claims was four years, and the fact that the interest on tax refunds depended on a Federal short-term rate, whereas the interest on c. 93A damages was set at twelve percent. McGonagle, supra. Here, while the Department of Public Health and the Board of Registration in Medicine may discipline those who violate G. L. c. 111, § 70, and G. L. c. 112, § 12CC, nothing about that is inconsistent with c. 93A remedies. See 105 Code Mass. Regs. §§ 130.111-130.112 (2017) (allowing Department of Public Health to inspect hospitals and issue deficiency statements); 243 Code Mass. Regs. § 1.03(1) (2012) (allowing anyone to "make a complaint to the Board [of Registration in Medicine] which charges a licensee with misconduct").

The questions we must answer, then, are whether overcharging for medical records and bills is unfair or deceptive and, if so, whether it occurs in trade or commerce. See Klairmont, 465 Mass. at 174. Overcharging has repeatedly been found to be an unfair or deceptive act or practice. See Rita v. Carella, 394 Mass. 822, 823, 827 (1985) (overcharges in

violation of rent control ordinance recoverable under c. 93A);
Southbridge Water Supply Co. v. Department of Pub. Utils., 368
Mass. 300, 310 (1975) (suggesting that overcharged utility
customer may have c. 93A claim); Ramos v. International Fid.
Ins. Co., 87 Mass. App. Ct. 604, 605, 608 (2015) (excessive fees
charged by bail agent, in violation of court rule, were unfair
or deceptive).  See also Purity Supreme, Inc. v. Attorney Gen.,
380 Mass. 762, 779 (1980) (Attorney General acted within his
authority under c. 93A in promulgating regulation to prevent
overcharging on consumer goods).  Overcharging for medical
records and bills is no different, especially given the "self-
evident importance of the availability of medical records to
consumers."  Montanez v. 178 Lowell St. Operating Co., 95 Mass.
App. Ct. 699, 702 (2019).

Overcharging for medical records and bills also occurs in
trade or commerce.  Where medical disputes are concerned, we
distinguish between allegations regarding "the negligent
provision of medical care" and allegations regarding "the
entrepreneurial and business aspects of providing medical
services."  Darviris v. Petros, 442 Mass. 274, 279 (2004).  See
Morgan v. Laboratory Corp. of Am., 65 Mass. App. Ct. 816, 821-
822 (2006).  The negligent provision of medical care may not be
remedied through c. 93A, whereas unfair or deceptive acts or
practices pertaining to the entrepreneurial and business aspects

of providing medical services may be remedied through c. 93A. See Darviris, supra. As we previously concluded in Montanez, 95 Mass. App. Ct. at 702, providing copies of medical records is an entrepreneurial or business aspect of providing medical services.

Assuming all of the allegations in Beauchesne's complaint are true, as we must on a motion to dismiss, we conclude that he has properly asserted a claim for violation of c. 93A, § 2 (a). Those allegations include that NENA was aware of the reasonable-fee requirement and that it (1) charged a flat fee of forty-five dollars solely for the retrieval and copying of medical records and bills despite the reasonable fee requirement,[11] and (2) conditioned providing medical records and bills upon the payment of a fee that exceeded the reasonable fee, as that term has been defined by the Legislature. In reaching this conclusion, we again emphasize that we have not concluded whether Beauchesne was, in fact, overcharged or whether NENA's response to Beauchesne's request implicitly included a reasonable fee for the certification.

---

[11] To the extent NENA argues that the forty-five-dollar charge included a fee for the certification, Beauchesne notes that NENA did not disclose that fact. Regardless, it is evident that he requested certified copies of his medical records. At this stage and on the record before us, we do not address whether, viewing Beauchesne's request and NENA's response together, NENA's response could thus be viewed as implicitly including a reasonable fee for the certification.

3.  The class action.  In the same order in which the judge allowed NENA's motion to dismiss, the judge also denied Beauchesne's motion to certify the class.  The sole basis for doing so was that Beauchesne's individual claims had been dismissed and he therefore could not represent the interests of the class.  Where we vacate the dismissal of Beauchesne's c. 93A claim, the motion to certify the class should also be reconsidered by the Superior Court judge on remand if the need should arise.  See Doe v. Registrar of Motor Vehicles, 26 Mass. App. Ct. 415, 425 n.18 (1988) (noting class certification raises multiple issues, some factual, and concluding it was best left for trial court to determine class certification on remand if necessary where judge had rejected claim on merits and had not reached certification).

Conclusion.  So much of the judgment that dismissed Beauchesne's claim for violation of G. L. c. 93A and denied his motion for class certification is vacated.  The remainder of the judgment is affirmed.

So ordered.