JESSICA RAMOS & others[1] vs. INTERNATIONAL FIDELITY
INSURANCE COMPANY (and two companion cases[2]).

No. 13-P-1305.

Hampden. September 8, 2014. - July 9, 2015.

Present: TRAINOR, RUBIN, & SULLIVAN, JJ.

*Bail. Consumer Protection Act*, Unfair or deceptive act, Vicarious liability, Sure-
ty. *Agency*, Agent's contract, Liability of agent, Scope of authority or em-
ployment. *Contract*, Performance and breach, Surety, Damages. *Judgment*,
Interest. *Damages*, Breach of contract, Interest. *Interest. Practice, Civil*,
Summary judgment, Interest. *Surety*.

In a civil action seeking recovery of cash collateral and certain bail bond insur-
ance premiums paid by the plaintiffs to the defendant's agent (a bail bonds-
man who, prior to his death, had failed to deposit in escrow the plaintiffs'
collateral and whose estate was insolvent), the plaintiffs were entitled to the
entry of summary judgment in their favor on their G. L. c. 93A claims, where,
although there was no evidence that the defendant's response to the plaintiffs'
demand letters (denying the existence of an agency relationship) injured the
plaintiffs [608], the defendant was vicariously liable for the agent's over-
charges of fees exceeding five percent of the amount of recognizance (in
violation of the Superior Court rules) given that the overcharges indepen-
dently constituted unfair and deceptive acts or practices and the agent had
acted well within his actual authority [608-610]; further, the judge properly
entered summary judgment in the plaintiffs' favor on their claims for breach
of contract [610]; finally, all but one of the plaintiffs were entitled to
prejudgment interest dating to the agent's failure to return their collateral on
the dates that each of them satisfied the terms of bail in their cases [611-612],
and, in the case of a plaintiff who failed to satisfy the terms of his bail,
prejudgment interest ran to the date that the defendant obtained a reduction
of the bail due [612-613].

CIVIL ACTIONS commenced in the Superior Court Department on
September 2, 2010, November 17, 2010, and January 3, 2011.

After consolidation, the cases were heard by *Richard J. Carey*,

---

[1]Jacqueline Ortiz, Cindy Feliciano, Diana Lozada, and Hassan Ali.

[2]The two companion cases are Ashley M. Keyes *vs.* International Fidelity
Insurance Company and David Hale *vs.* International Fidelity Insurance Com-
pany. Three separate final judgments were entered in the three cases.

J., on motions for summary judgment, and the entry of judgment was directed by *Constance M. Sweeney*, J.

*Peter A. Slepchuk* (*Peter Slepchuk, Jr.*, with him) for the plaintiffs.

*Thomas F. McGuire & Michael J. Serduck* for the defendant.

RUBIN, J. The plaintiffs commenced these actions against the defendant, International Fidelity Insurance Company (IFIC), to recover cash collateral and certain bail bond insurance premiums collected from each of them by IFIC's agent William Fiore, who is now deceased. On cross motions for summary judgment, the motion judge allowed the plaintiffs' motions on their counts alleging breach of contract, and also allowed IFIC's motions on the counts alleging a violation of G. L. c. 93A. The plaintiffs, with the exception of Ashley M. Keyes, appeal from the dismissal of their c. 93A claims, and the defendant appeals from the allowance of the plaintiffs' motions on the breach of contract claims. The defendant also appeals from the calculation of prejudgment interest.

*Background.* William Fiore worked as a bail bondsman in Hampden and Berkshire Counties. It is undisputed that Fiore acted as an agent for IFIC, a New Jersey corporation. IFIC is a successor to Atlas Bonding Agency with whom Fiore had an "Agency Contract." While that agreement was in effect, Fiore was authorized to act as Atlas's — and then IFIC's — agent for the soliciting and writing of bail bonds. Fiore had been approved and registered by the administrator of bail as a professional bondsman for the Commonwealth and was authorized to act as an agent for the defendant. That approval and registration were in effect at all times relevant to this case.

Fiore was supplied by IFIC with powers of attorney and was authorized to issue bail bonds on IFIC's behalf. He sold bail bonds to each of the plaintiffs. On each plaintiff's bond, IFIC was the named surety. Each bond bore the signature of the given plaintiff, along with that of Fiore, who crossed out the word "Surety" and signed as "agent for International Fidelity Ins. Co."

Under the terms of the bail underwriting agreement between IFIC and Fiore, Fiore was to collect and deliver to IFIC collateral and to collect bond premiums, some of which were remitted to IFIC. Cash collateral received on behalf of IFIC was required to be "held in a separate cash collateral account and not [to] be commingled with other funds." Each of the plaintiffs in this action utilized Fiore's services as a bail bondsman to obtain either

his own release or the release of a third party on bail, from the Superior Court in Hampden County, the District Court in Holyoke, the District Court in Springfield, or the Superior Court in Berkshire County. Each paid a premium and each posted cash collateral.[3] Typically, upon receipt of a premium and collateral from the plaintiffs, Fiore wrote on the back of his business card "received $[amount] dep. [presumably deposit] from [plaintiff]. To be returned when case is over." He then dated and signed this receipt.[4]

In each case Fiore instructed the plaintiff that ten percent of the total bond amount constituted a nonrefundable cash bail bond insurance premium payment. This premium was charged in violation of rule 16 of the Superior Court Rules Governing Professional Bondsmen, which prohibits the charging of excessive or exorbitant fees, and provides that "any fee which exceeds in amount or value five percent of the amount of the recognizance when the bondman has received security . . . shall be deemed excessive or exorbitant."

In the case of each plaintiff, except Hassan Ali, at the end of the underlying criminal case, the plaintiff sought return of his or her collateral. In each case, that plaintiff discovered that Fiore had died, not having deposited any of the collateral in escrow, and leaving an insolvent estate. In the case of Hassan Ali, the defendant on whose behalf Ali purchased the bail bond defaulted. As a consequence, Ali's payments to Fiore totaled $50,000, the full bail forfeiture amount. Fiore failed to pay this money over to the court, which ultimately demanded payment from IFIC; IFIC eventually fully satisfied the bail forfeiture amount, which IFIC negotiated down to $25,000. Despite obtaining such reduction in the forfeiture amount, IFIC did not return the excess $25,000 (over the actual bail forfeiture amount) Ali had paid to its agent Fiore.

Each plaintiff except Keyes sent a timely demand letter, a prerequisite to bringing an action under G. L. c. 93A, § 9, asserting among other things that Fiore was IFIC's agent and that IFIC was liable to the plaintiff under established principles of agency law. Each received a reply from IFIC stating that Fiore "was an independent businessman who had a contractual relationship

---

[3]Some also provided additional noncash collateral.

[4]There are seven plaintiffs in these consolidated cases. Five of the plaintiffs retained their receipts from Fiore, while two — Hassan Ali and David Hale — stated in affidavits that they had either lost or misplaced their receipts. The difference is immaterial to the issues presented in this appeal.

with" IFIC, that the "relationship was defined by this contract," and that IFIC therefore was not liable for his wrongdoing. This response amounted to a denial of an agency relationship, the contours of which are defined not only by contract, but by common and statutory law. Each plaintiff subsequently brought suit against IFIC. These suits were consolidated by the Superior Court.[5] Each claimed a violation of G. L. c. 93A and a breach of contract.[6]

The Superior Court judges' rulings had three components that are the subject of this appeal. First, the judge who ruled on the motions for summary judgment allowed the plaintiffs' motions for summary judgment on their breach of contract claims, concluding that Fiore was an agent of IFIC when he entered into agreements with the plaintiffs, as evidenced by IFIC's granting of a power of attorney. The judge determined that IFIC was vicariously liable for Fiore's acts. The judge ruled that IFIC was liable to the plaintiffs for the amounts wrongfully appropriated by Fiore, as well as the premium overcharges (in excess of five percent) and the amount of interest that would have accrued on the plaintiffs' money. The judge also ruled that Ali should recover $25,000, the amount that exceeded what IFIC actually paid into court. IFIC appeals from this ruling.

Second, the motion judge granted IFIC's motion for summary judgment on the plaintiffs' G. L. c. 93A claims. The motion judge analyzed only IFIC's wrongful denial of liability in response to the plaintiffs' demand letters and concluded that the element of causation (that the unfair or deceptive act actually cause harm to the plaintiffs) was lacking. All the plaintiffs except Keyes, who did not send a demand letter, appeal from this ruling.

Third, after the motion judge initially entered orders on the summary judgment motions, a second judge of the Superior Court held a hearing on November 6, 2012, to determine the date from which interest would be calculated on the plaintiffs' breach of contract claims. The second judge ruled that each of the contracts was breached when Fiore took additional security over the lawful

[5]Ramos, Ortiz, Feliciano, Lozada, and Ali filed a complaint on September 2, 2010, while Keyes filed a complaint on November 17, 2010, and Hale filed a complaint on January 3, 2011. The Superior Court consolidated the plaintiffs' cases on February 10, 2011, but separate docket numbers were retained, and separate judgments entered in the three cases.

[6]The plaintiffs also brought claims under G. L. c. 176D. They have not appealed from the allowance of IFIC's motion for summary judgment on these claims.

amount and held that interest began to run from that date; final judgments entered accordingly. IFIC appeals from this ruling.

*Discussion.* 1. *The plaintiffs' appeal on the G. L. c. 93A claims.* The judge concluded that the plaintiffs could not proceed on their G. L. c. 93A claims because the defendant's responses to the plaintiffs' demand letters — in which IFIC asserted that Fiore was an independent businessman — did not cause the plaintiffs harm. "[C]onduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes." *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 474 (1991) (citation and quotation omitted). As explained *infra*, IFIC had a contractual obligation to return the plaintiffs' collateral due to its agency relationship with Fiore. IFIC's agent Fiore breached the contracts with the plaintiffs by failing to return their collateral. If a fact finder were to find that the response letters from IFIC falsely denying the agency relationship were sent when IFIC knew that it had an obligation because of that relationship to return the plaintiffs' collateral, and in an attempt to cause the plaintiffs to decline to enforce their rights, the fact finder could find such conduct to constitute independent c. 93A violations. Nonetheless, the judge was correct that there was no evidence here that this conduct by IFIC injured the plaintiffs. They were not misled into failing, before the expiration of the statute of limitations to file claims for the underlying damages, for example, nor is this a case under G. L. c. 176D, § 3(9)(*f*), which requires a defendant to make a prompt, fair, and equitable settlement offer when liability has become reasonably clear, nor have the plaintiffs provided any other evidence in the record of injury caused them by the response letters sent by IFIC. See, e.g., *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 676 (1983). Consequently, summary judgment on the c. 93A claims was correctly entered in favor of the defendant to the extent they were based on the defendant's response to the demand letters.

The plaintiffs, however, also argue that IFIC is vicariously liable under G. L. c. 93A for the overcharges themselves. We agree with the major premise of this argument — that the overcharge in each case not only violated the Superior Court rules, but independently was an unfair and deceptive act or practice in violation of c. 93A. Compare *Casavant* v. *Norwegian Cruise Line Ltd.*, 460 Mass 500, 504 (2011) (holding a violation of certain regulations also violates c. 93A).

IFIC's primary argument in response is that this theory was not put forward below. But while the judge did not address the matter, each c. 93A count of the complaints on which summary judgment is being appealed alleges as to IFIC that the mishandling of the security funds (and collateral) and the excess premium charges were unfair and deceptive acts or practices. These allegations are reiterated in the plaintiffs' demand letters; the letters also assert that "well established agency and vicarious liability principles" render IFIC liable.[7] Likewise, each appealing plaintiff's motion for summary judgment includes the statement that "Mr. Fiore's practice of charging 10 percent premiums contrary to law [was an] unfair and deceptive act[.]" The issue was adequately preserved.

The defendant argues in the alternative that vicarious liability under G. L. c. 93A is unwarranted here.[8] It is undisputed that Fiore was IFIC's agent, acting with actual authority provided by IFIC's agreements with him. IFIC argues it should nonetheless not be held liable because (1) Fiore's actions were not motivated by a desire to benefit it, and (2) it was wholly ignorant of such actions.

"[A] principal," however, "may be liable for the fraud of an agent who is acting entirely for his own purposes but who, to the defrauded party, is apparently acting for the principal." Restatement (Second) of Agency § 282 comment (f) (1957). "A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud." *Id.* at § 261. See *id.* at § 262 ("A person who otherwise would be liable to another for the misrepresentations of one apparently acting for him is not relieved from liability by the fact that the servant or other agent acts entirely for his own purposes, unless the other has notice of this"). See also *New England Acceptance Corp.* v. *American Mfrs. Mut. Ins. Co.*, 373 Mass. 594, 597 (1977) (adopting this rationale, as spelled out in the Appeals Court's decision in the same case, 4 Mass. App. Ct. 172, 180 [1976]). These principles apply to the circumstances here, even were we to accept IFIC's characterization of events

---

[7]Keyes, again, is not appealing from the summary judgment on her c. 93A count.

[8]Vicarious liability means "liability imposed upon one person because of the act or omission of another, such as his employee." Ballentine's Law Dictionary 1342 (3d ed. 1969).

(which of course is not how we proceed in this appeal from allowance of IFIC's motion for summary judgment). These principles apply in actions under G. L. c. 93A, as well as in common-law tort cases, see *Kansallis Fin. Ltd.* v. *Fern*, 421 Mass. 659, 671-672 (1996), and liability for multiple damages under c. 93A may be imposed upon a principal corporation with no knowledge of its agent's wrongdoing, "because of the knowing and wilful acts of [its] agent[ ]." *Id.* at 673.

The case of *Cranston* v. *Healer Motors, Inc.*, 358 Mass. 806 (1970), on which IFIC would rely, does nothing to assist it. In that fraud case, the defendant car dealership was not vicariously liable for "an exchange" by one of its salesman "of two cars not owned by the defendant on premises unconnected with the defendant." *Ibid.* As the court there explained, "[t]he salesman's authority extended only to sales made in the usual course of business, which would not include an exchange of two cars not owned by the defendant on premises unconnected with the defendant." *Ibid.* Here, Fiore's entry into contracts for the sale of bail bonds was well within his actual authority. The allowance of the defendant's motion for summary judgment with respect to the plaintiffs' c. 93A counts therefore is reversed, and the case is remanded with instructions to allow the plaintiffs' motion with respect to the plaintiffs' c. 93A claims stemming from Fiore's illegal over-charging. Any damages and attorney's fees pertaining to these claims will be determined on remand.

*2. IFIC's appeal: the contract claims.* a. *Summary judgment.* IFIC's only argument in support of reversal of the judge's allow-ance of the motions for summary judgment on the plaintiffs' con-tract claims is that under the agency principles applicable to fraud by an agent, it is not liable for Fiore's conduct. This argument misses the mark in two respects.

First, as described above, under agency principles, IFIC is liable for the acts of its agent in this case. Second, these are not in any event claims for fraud, they are claims for breach of contract — so the question is not one of vicarious liability, but only whether the principal, IFIC, is bound by the terms of the contracts entered into by its agent. It seems clear that the entry into contracts for bail bonds issued by IFIC is within the scope of the authority granted Fiore, and so IFIC is bound by his signature, but we need not rule definitively on the issue because IFIC has not argued to the contrary, and any such claim therefore has been waived.

b. *Prejudgment interest.* In a contract case, the prevailing party is entitled to prejudgment interest. See G. L. c. 231 § 6C. If the prevailing party establishes the date of the breach or demand, it is entitled to interest beginning at that date. *Ibid.* It is the plaintiff's burden satisfactorily to establish the date of breach or demand. *Striar* v. *American Med. Intl.*, 45 Mass. App. Ct. 87, 104-105 (1998) (affirming the calculation of interest from the date of suit). If the plaintiff fails to do so, interest runs "from the date of the commencement of the action." G. L. c. 231 § 6C, as appearing in St. 1993, c. 110, § 224.

To determine the date of the breach of each contract, we must determine what the terms of the contracts are. This is easier said than done. The primary evidence of the agreement between each plaintiff and Fiore is the cursory statement on the back of his business card stating that the collateral was "to be returned when case is over." Obviously this brief entry does not contain all the terms of the contract. Some may be inferred from the bail bonds themselves, which detail the surety's commitment to the Commonwealth that the criminal defendant will appear and which detail what constitutes a default. In the circumstances of the case, the other terms of the contract must be implied in order to effectuate the underlying intention of the parties. *Bernard* v. *Cameron & Colby Co.*, 397 Mass. 320, 321-322 (1986). See *Situation Mgmt. Sys., Inc.* v. *Malouf, Inc.*, 430 Mass. 875, 878 (2000) ("[T]o create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement. . . . It is not required that all terms of the agreement be precisely specified, and the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract").

The motion judge concluded that the contract in this case was breached when Fiore charged each plaintiff a premium of twice the maximum lawful rate. The plaintiffs' affidavits, however, show that they agreed to pay that unlawful premium. While that term certainly was not enforceable, and might have rendered the contract voidable, the plaintiffs cite no authority stating that the inclusion of such a term in a contract amounts to a "breach" of the very contract in which it is included.

Alternatively, the plaintiffs argue that Fiore's failure to put their cash collateral in escrow violated the contract. We have been pointed to no statute or regulation requiring the use of an escrow

account. And while the contract between IFIC and Fiore required the use of one, it also states that such funds are held for the benefit of IFIC. The plaintiffs do not argue that they are third-party beneficiaries of that contract, and we therefore express no opinion on the question. Obviously, the use of escrow would seem to be prudent, but in the absence of further legislative or regulatory action requiring it, we do not think the plaintiffs have shown that failure to place their cash collateral in escrow violated the terms of their own contracts with IFIC, entered into through its agent Fiore.

We may assume without deciding that it is an implied term of each contract that the plaintiff's collateral would not be converted to the use of the surety's agent. However the plaintiffs have not provided sufficient evidence for a court to determine the exact dates on which Fiore converted the property to his own use.

Finally, then, except with respect to plaintiff Ali, discussed separately below, the earliest date upon which the plaintiffs have shown breach of each contract was the date on which Fiore (or his estate) failed to return the funds upon each plaintiffs' satisfaction of the terms of his or her bail bond — what the writing signed by Fiore called "the end of the case." Because the date each plaintiff's terms of bail were satisfied is reflected in the evidence, such dates are the earliest appropriate dates of breach to be used in calculating prejudgment interest with respect to each contract (except Ali's). On that date, the collateral should have been returned to each plaintiff though it was not. The dates vary for each plaintiff: for Ramos, October 13, 2009; for Ortiz, January 31, 2008 (for a first bail bond contract), and October 13, 2009 (for a second); for Feliciano, May 20, 2008; for Lozada, May 8, 2008; for Keyes, January 9, 2009; and for Hale, May 27, 2010.

c. *Hassan Ali.* Ali's case presents some additional wrinkles. The overcharging for premiums, while a c. 93A violation with respect to Ali as well as the other plaintiffs, did not amount to a breach of contract. And because the criminal defendant for whom he purchased the bond, Sol Oritz, defaulted, Ali was not entitled to a return of collateral — so failure to return his collateral also was not a breach of contract.

An implied term of Ali's contract with IFIC made through its agent Fiore, however, was that collateral would be taken to the extent necessary to pay the amount of the bail forfeiture funds that the surety would be required to pay to the Commonwealth upon Solis Ortiz's default — and no more. Fiore collected money

from Ali several times. Initially, Ali paid Fiore $10,000, $5,000 of which was a nonrefundable premium (although $2,500 of this premium was illegal); Ali also signed documents giving Fiore a mortgage on property Ali owned through a corporation. After the default, Ali paid Fiore $5,000 to delay foreclosure on his property. Ali then refinanced the property, generating income sufficient to provide Fiore with a $36,500 check (with $1,500 of that amount ostensibly covering Fiore's expenses). All told, then, Fiore collected $51,500 from Ali, although Ali excludes the last $1,500 from his claim, asserting that the relevant amount he paid was $50,000. Ali's claim is that he is entitled to the return of his $25,000 overpayment, because IFIC ultimately negotiated the bail forfeiture amount downward to $25,000.

We agree with Ali and the motion judge: IFIC is bound to return $25,000 to Ali from the amount collected by its agent Fiore on its behalf. To be sure, it appears that Fiore did not pay any of the money over to the defendant. Nonetheless, Fiore's breach of his contract with IFIC does not defeat Ali's claim. Ali agreed to allow his collateral to be used to satisfy the Commonwealth in the event of a default. He did not agree to allow the balance of his collateral to be kept by IFIC if the default amount was reduced. That IFIC's agent kept the money Ali paid rather than turning it over to IFIC for use in satisfying the Commonwealth may have given IFIC a cause of action against the agent or his estate. But it did not change the terms of IFIC's agreement with Ali, who bears no responsibility for limiting the harm done IFIC by Fiore.

Here, the Superior Court accepted a payment of $25,000 in satisfaction of IFIC's obligation on the bail bond. IFIC, whose agent collected $50,000 from Ali, must return the $25,000 Ali requested because it constitutes an amount in excess of that required to satisfy IFIC's obligation on the bail bond. The failure to return that $25,000 amounts to a breach of contract, and, given IFIC's knowledge of its agency relationship with Fiore, to a violation of G. L. c. 93A. Prejudgment interest on Ali's contract claim should run from the date on which Ortiz's bail was reduced from $50,000 to $25,000.

*Conclusion.* In the case of Ashley M. Keyes *vs.* International Fidelity Insurance Company (No. HDCV2010-1038), the portion of the judgment designating the date upon which statutory interest begins to run is vacated, and an amended judgment shall enter with the date of January 9, 2009, as the date for computing statutory interest. In all remaining respects, the judgment is affirmed.

In the cases of Jessica Ramos *vs.* International Fidelity Insurance Company (No. HDCV2010-792) and David Hale *vs.* International Fidelity Insurance Company (No. HDCV2011-4), the portions of the judgments setting forth the amount of damages for each breach of contract claim are affirmed. The remaining portions of the judgments are vacated for further proceedings consistent with this opinion.

*So ordered.*